Carol **BECKER**, et al., petitioners, **Appellants**,

v.

**STATE FARM MUTUAL AUTOMO-BILE INSURANCE COMPA-NY, Respondent.**

No. C6–99–288.

Supreme Court of Minnesota.

May 25, 2000.

John P. Dehen, New Brighton, for appellants.

Ken D. Schueler, Dunlap and Seeger, P.A., Rochester, Kay Nord Hunt, Lommen, Nelson, Cole & Stageberg, Minneapolis, for respondent.

Paul D. Peterson, Woodbury, for amicus curiae Minnesota Trial Lawyers Association.

Paul A. Banker, Arthur, Chapman, Kettering, Smetak & Pikala, Minneapolis, for amicus curiae Robert J. Hauer, Jr. and Theodore J. Smetak.

## OPINION

GILBERT, Justice.

This case addresses the question of whether an employee injured while occupying her employer's insured vehicle can seek excess uninsured/underinsured motorist (UM/UIM) coverage from her personal automobile insurance policy under Minn.Stat. § 65B.49, subd. 3a(5) (1998). Carol Becker, a truck driver, was injured in a motor vehicle accident during the course and scope of her employment while driving a semi-truck owned by her employer. Becker obtained UM/UIM benefits from her employer's coverage, but her covered damages exceeded the policy limits of liability available from the occupied vehicle. She thus sought excess coverage from her personal automobile insurance policy in which she was otherwise insured. The court of appeals concluded that pursuant to Minn.Stat. § 65B.49, subd. 3a(5), Becker was an insured under her employer's policy on the occupied motor vehicle and thus was not entitled to seek excess UM/UIM protection afforded by her policy in which she was otherwise insured. We reverse and remand to the court of appeals for further proceedings.

The facts of this case, other than the amount of damages, are undisputed. On July 2, 1992, appellant Carol Becker was injured in a car-truck accident near Everly, Iowa, when the truck she was driving was struck by a car that crossed over the centerline. At the time of the accident, Becker was employed by Barry Wold Trucking Company and was driving in the course and scope of her employment a 1992 Peterbilt semi-truck owned by Wold Trucking. Wold Trucking had workers' compensation insurance with Employers Mutual Insurance Company, which paid Becker at least $52,810.06 in benefits after the accident.

Becker and her husband, David Becker, brought a claim against the driver of the other car.[1] The other driver had very few assets and was insured by Midwest Mutual Insurance Company with a bodily injury liability limit of only $20,000.[2] On May 25, 1995, the Beckers agreed to a settlement with Midwest for $20,000 in return for a

---

1. Becker injured her knee and claims she is unable to return to work as a truck driver or do many other things she used to enjoy. Becker's husband, who was also her partner driving trucks, seeks lost wages as well as other damages.

2. A 1993 claim investigation report indicated that the other driver was a retiree living in a long-term care facility due to the severity of her injuries and declining health. She had no assets besides her house and a few personal belongings. Her house and most of her personal belongings were sold in 1994, but these funds were consumed by her health care costs. The other driver died on January 30, 1997.

release of "any/all claims" against the other driver or Midwest. Midwest paid this money directly to Employers Mutual, the workers' compensation insurer, which then waived its subrogation rights against the other driver.

The Beckers claim the damages that they sustained exceeded their recovery from the other driver. Because the other driver was considered an uninsured/underinsured motorist under Minnesota law,[3] the Beckers sought UM/UIM coverage. Pursuant to Minn.Stat. § 65B.49, subd. 3a(5), the Beckers first sought UM/UIM coverage from the insurer of the truck Becker was driving, Harco Insurance Company. Harco paid the Beckers $50,000 UM/UIM benefits, the extent of its liability under the policy with Wold Trucking. However, the Beckers claim they have sustained damages in excess of this amount.

In January 1997, the Beckers notified their personal automobile insurer, State Farm Mutual Automobile Insurance Company, that they were filing a claim for excess UM/UIM coverage under their policy, which had limits of $100,000 per person, up to a total of $300,000 per accident. This notification was the first State Farm knew of Becker's 1992 accident. State Farm initially denied coverage on the grounds that the Beckers did not provide State Farm with notice of their intent to settle with Watson as required by our decision in *Schmidt v. Clothier*, 338 N.W.2d 256, 263 (Minn.1983).

The Beckers initiated this lawsuit in May 1997. State Farm moved for summary judgment because the Beckers' failed to provide State Farm with a *Schmidt–Clothier* notice of their settlement with

Watson. The district court denied the motion, deciding that State Farm was not prejudiced by the lack of *Schmidt–Clothier* notice because Watson "would have been a very poor subrogation prospect."

In 1998, State Farm again moved for summary judgment, this time claiming that the Beckers were not entitled to seek excess UM/UIM benefits under Minn.Stat. § 65B.49, subd. 3a(5), because Becker was an insured under her employer's insurance policy on the occupied vehicle and thus she could only receive UM/UIM benefits from that insurance policy. The Beckers responded that under the definition of insured in the No–Fault Act found at Minn. Stat. § 65B.43, subd. 5 (1998), Becker was not a named insured, or the spouse, resident relative, or a minor in the custody of a named insured, under the Harco policy so she was entitled to seek excess coverage. The district court granted summary judgment to State Farm, deciding the issue on the basis of an unpublished court of appeals opinion, *Crane v. ABF Freight Systems, Inc.*, No. C2–95–1039, 1995 WL 635131 (Minn.App. Oct.31, 1995), *review denied* (Minn. Dec. 20, 1995).[4]

The Beckers appealed and the court of appeals affirmed. *See Becker v. State Farm Mut. Auto. Ins. Co.*, 596 N.W.2d 697, 701 (Minn.App.1999). The court of appeals concluded that it was error for the district court to rely exclusively on the unpublished *Crane* decision, but the court held the error was harmless because the language of the Minnesota No–Fault Act and published case law supported the decision. *See Becker*, 596 N.W.2d at 700. The court of appeals based its decision on two of its prior cases. The first case cited was *LaFave v. State Farm Automobile Insur-*

---

3. The other driver's liability coverage, although in compliance with Iowa law, was below the $30,000 required by Minn.Stat. § 65B.49, subd. 3 (1998). *See Murphy v. Milbank Mut. Ins.*, 320 N.W.2d 423, 425 (Minn. 1982).

4. For the purposes of the anticipated appeal, after granting summary judgment to State Farm, the district court also ruled on State Farm's claim that it is entitled to a collateral source offset for the workers' compensation benefits Becker received. The court of appeals did not reach that issue because it held that State Farm was entitled to summary judgment, and that issue is not before us.

*ance Co.,* 510 N.W.2d 16 (Minn.App.1993). *See Becker,* 596 N.W.2d at 700. In *La-Fave,* Sharen LaFave was injured when the pick-up truck she was riding in, which was owned and operated by her husband, was struck by an uninsured motorist. *See id.* at 17. Sharen LaFave sought excess UM/UIM coverage from another insurance policy on an automobile owned by her. *See id.* at 17–18. The court of appeals concluded that she was an insured under the policy on the occupied vehicle and therefore she was not entitled to excess coverage under her own policy. *See id.* at 18–19.

The second decision relied upon by the court of appeals was *Murphy v. Milbank Mutual Insurance Co.,* 438 N.W.2d 390 (Minn.App.1989), *rev. denied* (Minn. June 9, 1989), which held that the statutory definition of insured in section 65B.43, subd. 5, also includes employees of the named insured. *See Becker,* 596 N.W.2d at 700–01. Based on these cases, the court of appeals rejected the "narrow definition" of insured advocated by the Beckers and concluded that because Becker was "covered" under a plan of reparation security, she was an insured under her employer's policy. *See id.* at 701. Thus, the court of appeals held she could not seek excess UM/UIM coverage from her own insurance policy with State Farm under Minn. Stat. 65B.49, subd. 3a(5). *See Becker,* 596 N.W.2d at 701. In light of this holding, the court of appeals did not reach the *Schmidt–Clothier* notice and collateral source offset issues decided by the district court.

The Beckers petitioned this court for review. State Farm requested cross-review of the *Schmidt–Clothier* notice and collateral source offset issues. We granted the Beckers' petition for review, but denied State Farm's request for cross-review.

■ On appeal from summary judgment we must determine whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. *See Lobeck v. State Farm Mut. Auto. Ins. Co.,* 582 N.W.2d 246, 249 (Minn.1998). The only issue before us involves the interpretation of Minn.Stat. § 65B.49, subd. 3a(5). The interpretation of a statute is a question of law that is reviewed by this court de novo. *See Hertz Corp. v. State Farm Mut. Ins. Co.,* 573 N.W.2d 686, 688 (Minn.1998).

The Minnesota No–Fault Automobile Insurance Act requires every motor vehicle owner to maintain, and mandates all plans of reparation security to provide, separate minimum UM/UIM limits of coverage of $25,000 per person, up to a total of $50,000 per occurrence. *See* Minn.Stat. § 65B.49, subd. 3a(1)-(2) (1998). Under this system, individuals may select and purchase the amount of UM/UIM coverage they desire on their own personal automobile insurance policy up to the bodily injury liability limits of that policy. *See* Minn.Stat. § 64B.49, subd. 3a(3) (1998).

The crucial question presented is whether under these facts this reparation security is nullified in regard to covered damage claims when an individual is the driver and/or occupant of her employer's insured motor vehicle. We must look to Minn. Stat. § 65B.49, subd. 3a(5), in answering this question. This statute provides:

If at the time of the accident the injured person is occupying a motor vehicle, the limit of liability for uninsured and underinsured motorist coverages available to the injured person is the limit specified for that motor vehicle. However, if the injured person is occupying a motor vehicle of which the injured person is not an insured, the injured person may be entitled to excess insurance protection afforded by a policy in which the injured party is otherwise insured. The excess insurance protection is limited to the extent of covered damages sustained, and further is available only to the extent by which the limit of liability for like coverage applicable to any one motor vehicle listed on

the automobile insurance policy of which the injured person is an insured exceeds the limit of liability of the coverage available to the injured person from the occupied motor vehicle.

Minn.Stat. § 65B.49, subd. 3a(5).

The first sentence of subdivision 3a(5) directs injured occupants to seek UM/UIM coverage initially from the insurer of the motor vehicle they occupied at the time of the accident and establishes as limits of liability those specified in the policy on the occupied vehicle. *See id.; Hanson v. American Family Mut. Ins. Co.*, 417 N.W.2d 94 (Minn.1987). The second sentence of the subdivision provides that if the injured person is not an insured of the occupied motor vehicle, the injured person may then be entitled to seek excess insurance protection through another automobile insurance policy in which the injured person is insured. *See* Minn.Stat. § 65B.49, subd. 3a(5). The third sentence of this statute then limits the availability of this excess coverage to the "extent of covered damages sustained," and to the extent that "like coverage" from another automobile insurance policy "exceeds the limit of liability of the coverage available to the injured person from the occupied motor vehicle." *Id.*

Because the second sentence of subdivision 3a(5) makes an injured person eligible for excess UM/UIM coverage only if she is "not an insured" with respect to the occupied vehicle, the resolution of this case turns on the proper definition of "insured" as used in subdivision 3a(5). To resolve this controversy over applicable coverage, both parties direct our attention to the definition of insured in section 65B.43, subd. 5. According to that statute, an insured is

an insured under a plan of reparation security as provided by sections 65B.41 to 65B.71, including the named insured and the following persons not identified by name as an insured while (a) residing in the same household with the named insured and (b) not identified by name in

any other contract for a plan of reparation security complying with sections 65B.41 to 65B.71 as an insured:

(1) a spouse,

(2) other relative of a named insured or

(3) a minor in the custody of a named insured or of a relative residing in the same household with a named insured.

Minn.Stat. § 65B.43, subd. 5.

■ The Beckers urge this court to interpret the statutory definition of insured as meaning only the named insured, spouse of the named insured, or relative or minor residing in the same household with a named insured. In *LaFave*, one of the decisions relied upon by the court of appeals, the injured occupant was the spouse of the named insured in the policy on the occupied vehicle, thus meeting the statutory definition of an insured. *See LaFave*, 510 N.W.2d at 17, 19. However, in the instant case, Barry Wold was the named insured on the policy for the vehicle Becker was driving and, as a result, Becker was not the named insured, the spouse of the named insured, or a resident relative or minor of the named insured under that policy. Therefore, if the legislature intended the term "insured" as used in section 65B.49, subd. 3a(5), to mean only those persons expressly mentioned in section 65B.43, subd. 5, Becker is not an insured under the policy on the vehicle she was driving and would be entitled to seek excess insurance from her own personal automobile policy.

In contrast, State Farm argues that an employee-driver is an insured within the statutory definition. First, State Farm points out that under the definition an insured is anyone "insured under a plan of reparation security * * * *including* the named insured," spouse of the named insured, and minor or resident relative of the named insured. Minn.Stat. § 65B.43, subd. 5 (emphasis added). State Farm contends that the term "including" in the

definition is a word of illustrative application that is followed by a nonexhaustive list of examples of insureds, and thus an employee-driver could also be an insured under the definition. State Farm adds that Becker, as the obvious object of her employer's policy on the truck she was driving, was an insured under a plan of reparation security.[5]

We do not find State Farm's arguments persuasive. First, a broad construction of the definition of insured in section 65B.43, subd. 5, is difficult to reconcile with the language of section 65B.49, subd. 3a(5). In essence, State Farm's position is that because Becker received benefits from her employer's policy on the truck she was driving, she should be precluded from seeking the excess UM/UIM coverage she paid for in a policy where she was otherwise insured, as provided for by section 65B.49, subd. 3a(5). By this argument, anyone who receives UM/UIM benefits from the policy on the occupied vehicle is an insured and thus is not entitled to seek excess UM/UIM coverage from another policy even though that coverage is provided for in the remaining sentences of section 65B.49, subd. 3a(5).[6]

State Farm's position would only provide recourse to a person who had purchased UM/UIM coverage and was injured while occupying an uninsured vehicle. This interpretation does not make sense in light of the language that is used in the remaining provisions of section 65B.49, subd. 3a(5). The legislature used language such as "*excess* insurance protection afforded by a policy in which the injured party is *otherwise insured,*" "*like* coverage applicable," and "exceeds the limit of liability of the *coverage available* * * * from the occupied motor vehicle." Minn.Stat. § 65B.49, subd. 3a(5) (emphasis added). These terms would be meaningless, and "excess" UM/UIM coverage would be nullified, if only occupants of uninsured vehicles could seek UM/UIM coverage from their personal automobile policies. To the contrary, this language demonstrates that the legislature envisioned that more than one policy could provide UM/UIM coverage under these circumstances. Further, section 65B.49, subd. 3a(5), establishes the priority scheme for the source of any UM/UIM coverage for persons injured in accidents while occupants of motor vehicles, except for those persons excluded by the definition of insured provided in Minn.Stat. § 65B.43, subd. 5. *See* Michael K. Steenson, *Minnesota No–Fault Automobile Insurance,* 217–1 (2d ed. 1989 & Issue 8, 1998).

Accordingly, we do not interpret the term "insured" as used in section 65B.49, subd. 3a(5), so broadly as to include any person who receives UM/UIM benefits from a policy only by virtue of their occupancy of a vehicle. State Farm argues, however, that it does not seek such a

---

5. As support for this proposition, State Farm cites to a court of appeals' decision with similar facts, *Murphy v. Milbank,* 438 N.W.2d 390, 395 (Minn.App.1989). However, that case was decided under a statutory scheme that existed prior to 1985, before the statutory UM/UIM priority scheme and excess coverage provisions of section 65B.49, subd. 3a(5), were enacted.

6. Professor Michael K. Steenson identified this problem in the statutory language of section 65B.49, subd. 3a(5), in his treatise *Minnesota No–Fault Automobile Insurance,* 217–1 (2d ed. 1989 & Issue 8, 1998). He stated:

    The priority scheme [of subdivision 3a(5)] establishes the source of coverage

for underinsured and uninsured motorist insurance, and it also mandates coverage in those situations. Occupants of vehicles are entitled to recover under the coverage on those vehicles, irrespective of whether they are insureds under the coverage. * * * Therefore, the second sentence of the statute must mean that the person who may seek excess coverage is "insured" other than by reason of occupancy, that is, as a resident relative. Otherwise, excess insurance coverage would never be available under the statute because the person seeking coverage under the policy covering the car in which he is riding would always be an *insured* by reason of occupancy.

*Id.*

broad holding, only that employee-drivers should be precluded from seeking UM/UIM coverage from their personal automobile insurance policies. However, Becker only received coverage from the policy on her employer's vehicle because she was an *occupant* of that vehicle and was guaranteed such coverage by section 65B.49, subd. 3a(5). Her status as an employee had nothing to do with her entitlement to that primary UM/UIM coverage.

Then the fundamental question becomes under what circumstances does the legislature intend an injured person to recover UM/UIM benefits only from the policy on the occupied vehicle and not also have recourse to her own mandatory automobile policy for excess UM/UIM coverage. *See* Minn.Stat. § 645.16 (1998) ("The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature."). State Farm argues that the legislature has expressed an intent that employee-drivers should not have recourse to their excess UM/UIM coverage by its enactment of Minn.Stat. § 548.36 (1998), which allows a court to reduce an award to an injured plaintiff by the amount of workers' compensation benefits received, among other things. We disagree.

First, section 548.36 does not provide any guidance as to whether an employee-driver should be precluded from seeking excess UM/UIM coverage from her personal automobile policy under section 65B.49, subd. 3a(5), of the No–Fault Act. Rather, this argument by State Farm goes to the issue of collateral sources for offsetting recoveries, an issue that State Farm raised below but that was not addressed by the court of appeals and is not before us. Second, the legislature has indicated its willingness and ability to provide for limitations on recourse to a personal automobile policy in other situations. For example, the legislature has precluded UM/UIM coverage for motorcycle occupants, as well as the occupants and resident relatives of owned but uninsured vehicles. *See*

Minn.Stat. §§ 65B.43, subd. 5; 65B.49, subd. 3a(7)-(8) (1998). These persons do not have recourse to the UM/UIM coverage on a personal automobile insurance policy due to statutory limitations.

We hold that the correct interpretation of "insured" as used in Minn.Stat. § 65B.49, subd. 3a(5), is limited to those persons specifically listed in Minn.Stat. § 65B.43, subd. 5; that is, the named insured, or spouse, minor, or resident relative of the named insured, in the policy of the occupied vehicle. This interpretation is consistent with those provisions of Minn. Stat. § 65B.49, subd. 3a(1)–(2) (1998), that permit individuals to protect themselves and family members by paying for UM/UIM coverage to which they can turn in the event they are injured while riding in someone else's vehicle covered by a policy with lower limits. Our decision also comports with the underlying goal of the UM/UIM scheme as enacted in 1985. That scheme gives motor vehicle owners the ability to select and purchase the amount of UM/UIM coverage they desire in excess of the mandatory minimums, and then access that coverage in the event they are injured while occupying a vehicle owned by someone who has purchased only the minimum UM/UIM coverage, subject to the limitations of section 65B.49, subd. 3a.

Accordingly, we reverse the court of appeals and hold that Becker may seek excess UM/UIM coverage afforded her under her automobile policy with State Farm. As provided in the No–Fault Act, her claim is limited to that amount which "exceeds the limit of liability of the coverage available to the injured person from the occupied motor vehicle." Minn.Stat. § 65B.49, subd. 3a(5). We remand to the court of appeals for further proceedings.

Reversed and remanded.