**WEST BEND MUTUAL INSURANCE COMPANY, Respondent,**

v.

**ALLSTATE INSURANCE COMPANY, Appellant,**

**Thomas Oczak, et al., Appellants.**

**Nos. A07–248, A07–357.**

Supreme Court of Minnesota.

Dec. 24, 2009.

---

Dale M. Wagner, Louis J. Speltz, Bassford Remele, P.A., Minneapolis, MN, for respondent.

William L. Davidson, Lind, Jensen, Sullivan & Peterson, P.A., Minneapolis, MN, for appellant Allstate Insurance Company.

Richard D. O'Dea, Ralph S. Palmer, Palmer O'Dea, L.L.C., Roseville, MN; and David K. Cody, The Cody Law Group, Chtd., St. Paul, MN, for appellants Thomas Oczak, et al.

Paul D. Peterson, Lori L. Barton, Harper & Peterson, P.L.L.C., Woodbury, MN, for amicus curiae Minnesota Association for Justice.

## OPINION

DIETZEN, Justice.

Appellant Thomas Oczak (Oczak) was seriously injured in a car accident in which the driver of the other car was underinsured. At the time of the accident, Oczak was the owner of North End 66, Inc. (North End),[1] and was driving a car owned by a customer of North End. After settling with the negligent driver's insurer, and the insurer of the car Oczak occupied, Oczak brought underinsured motorist (UIM) claims against West Bend Mutual Insurance Company (West Bend), the insurer of North End, and Allstate Insurance Company (Allstate), his personal insurer. West Bend brought a declaratory judgment action against Oczak and Allstate to determine the obligations and coverage priorities of the insurance policies. On cross-motions for summary judgment, the district court concluded that the Allstate policy provided excess UIM coverage and that the West Bend policy did not. The court of appeals affirmed, and we granted review. We affirm.

The material facts of the case are undisputed. Thomas Oczak was the owner and an employee of North End. North End is a corporation engaged in the business of servicing and repairing motor vehicles.

On July 13, 2000, Thomas Oczak was seriously injured in a car accident in which the driver of the other car was negligent and underinsured. At the time of the accident, Oczak was driving a car owned by North End's customer Justin Kelly. The negligent driver had liability coverage with policy limits of $100,000. The Kelly vehicle was insured with Mutual Service Insurance Companies (MSI) and had UIM policy limits of $100,000. Oczak had personal automobile insurance through an Allstate policy that provided UIM coverage with policy limits of $300,000. North End had garage business owner's liability insurance through West Bend that provided UIM coverage with policy limits of $500,000.

Oczak settled with the negligent driver's insurer for its liability policy limits of $100,000; and settled with Kelly's insurer, MSI, for its UIM policy limits of $100,000. Oczak then brought claims against Allstate and West Bend for excess UIM insurance

---

[1] Although the record does not establish that Oczak is the owner of North End, he identifies himself as such and the parties do not dispute this assertion.

benefits. The West Bend policy provides it will pay all sums an "insured" is legally entitled to recover as damages from an underinsured motorist, up to the policy limits of $500,000. An "insured" under the West Bend policy is defined, in part, as anyone occupying a "covered auto." In a letter to Oczak's attorney, West Bend conceded that the auto Oczak was driving was considered a "covered auto" under the policy.

West Bend brought a declaratory judgment action against Allstate and Oczak to determine the obligations and coverage priorities. All parties filed cross-motions for summary judgment. Oczak argued that MSI and West Bend were co-primary under the statute and their respective policies and therefore both provided UIM coverage to Oczak. Oczak and Allstate also argued that West Bend provided excess UIM coverage to Oczak. Following a hearing, the district court rejected both arguments, and concluded that West Bend was not co-primary, and that the Allstate policy, not the West Bend policy, provided excess UIM coverage. The court of appeals affirmed. *West Bend Mut. Ins. Co. v. Allstate Ins. Co.*, Nos. A07–0248, A07–357, 2008 WL 1747826 (Minn.App. Apr. 15, 2008). Allstate and Oczak filed separate petitions for review. We granted review of both petitions.

It is undisputed that Oczak is entitled to UIM benefits as a result of the serious injuries he sustained in the accident. Oczak has already recovered $100,000 in his settlement with the negligent driver's insurer and $100,000 in primary UIM benefits under the MSI policy that insured his customer's vehicle, but Oczak contends that he still is not fully compensated for his actual damages. Allstate, which insured Oczak's personal vehicle, has acknowledged there is excess UIM coverage available under its policy as a result of the

accident. At issue is whether the West Bend garage business owner's liability policy also provides UIM benefits to Oczak. The parties dispute whether Oczak is entitled to primary UIM benefits under the West Bend policy; whether he is entitled to excess UIM benefits under the West Bend policy; and whether any excess UIM benefits available under the West Bend policy have priority over the UIM benefits available under the Allstate policy. This dispute turns on the interpretation of various provisions of the No–Fault Act, and various provisions of the West Bend insurance policy.

## I.

### A. Statutory Framework

The No–Fault Act requires all motor vehicle insurance policies issued in Minnesota to provide certain minimum limits of uninsured (UM) and UIM coverage. *See* Minn.Stat. § 65B.49, subd. 3a(1) (2008). "Underinsured motorist coverage" means coverage for persons "who are legally entitled to recover damages for bodily injury from owners or operators of underinsured motor vehicles." Minn.Stat. § 65B.43, subd. 19 (2008). An "underinsured motor vehicle" is a motor vehicle "to which a bodily injury liability policy applies at the time of the accident but its limit for bodily injury liability is less than the amount needed to compensate the insured for actual damages." Minn.Stat. § 65B.43, subd. 17 (2008).

The No–Fault Act provides a framework for determining the source of coverage for UIM claims. Minnesota Statutes § 65B.49, subd. 3a(5), provides:

> If at the time of the accident the injured person is occupying a motor vehicle, the limit of liability for uninsured and underinsured motorist coverages available to the injured person is the limit speci-

fied for that motor vehicle. However, if the injured person is occupying a motor vehicle of which the injured person is not an insured, the injured person may be entitled to excess insurance protection afforded by a policy in which the injured party is otherwise insured. The excess insurance protection is limited to the extent of covered damages sustained, and further is available only to the extent by which the limit of liability for like coverage applicable to any one motor vehicle listed on the automobile insurance policy of which the injured person is an insured exceeds the limit of liability of the coverage available to the injured person from the occupied motor vehicle.

The first sentence of subdivision 3a(5) addresses primary UIM benefits; the second and third sentences address excess UIM benefits.

### B. Dispute over Meaning of Subdivision 3a(5)

■ Oczak first argues that under the language of Minn.Stat. § 65B.49, subd. 3a(5), and the West Bend policy, West Bend shares co-primary responsibility with MSI to provide UIM coverage. The interpretation of statutes and the interpretation of insurance policies are both questions of law that we review de novo. *Auto–Owners Ins. Co. v. Forstrom,* 684 N.W.2d 494, 497 (Minn.2004). The paramount goal of statutory interpretation "is to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2008). When interpreting a statute, we "construe words and phrases according to their plain and ordinary meaning." *Am. Family Ins. Group v. Schroedl,* 616 N.W.2d 273, 277 (Minn. 2000). When the language of a statute is unambiguous, its plain meaning is given effect. *Burkstrand v. Burkstrand,* 632 N.W.2d 206, 210 (Minn.2001).

We first consider the statutory language. The first sentence of subdivision 3a(5) addresses UIM benefits:

If at the time of the accident the injured person is occupying a motor vehicle, the limit of liability for uninsured and underinsured motorist coverages available to the injured person is the limit specified for that motor vehicle.

Minn.Stat. § 65B.49, subd. 3a(5). Although the word "primary" does not appear in this provision, we have referred to the coverage available under this sentence as primary UIM coverage. *See, e.g., Hanson v. Am. Family Mut. Ins. Co.,* 417 N.W.2d 94, 96 (Minn.1987) (noting that the statute designates "the occupied motor vehicle as the primary source of uninsured or underinsured motorist coverage").

■ Oczak argues there can be more than one policy that provides primary UIM coverage and that MSI and West Bend "share co-primary underinsurance liability." According to Oczak, the UIM "coverages available" to him are the coverage provided by MSI, the insurer of Kelly's vehicle, as well as the coverage provided by West Bend, the insurer of North End. Oczak stresses that the statute uses the term "coverages," which suggests that the legislature contemplated coverage under more than one policy. Allstate and West Bend contend there is nothing in the statute or case law that supports an argument for "co-primary" UIM coverage in this situation.

We read the word "coverages" in the first sentence to refer to UM and UIM "coverages" in an insurance policy, and not multiple UIM coverages in different policies. But the language of subdivision 3a(5) does not expressly address whether there can be more than one policy that provides primary UIM coverage. The statute simply directs injured persons to look to the limit of liability specified for the motor

vehicle they were occupying at the time of the accident. Minn.Stat. § 65B.49, subd. 3a(5). It is not clear from the language of the statute whether there can be more than one "limit of liability" specified for a single motor vehicle. *See id.* When the words of a statute are not explicit, we may look to other factors to ascertain legislative intent, including the occasion and necessity for the law, the circumstances under which it was enacted, the object to be obtained, and the former law. Minn.Stat. § 645.16.

Subdivision 3a was enacted in 1985 as an amendment to the No–Fault Act. Act of June 27, 1985, ch. 10, § 68, 1985 Minn. Laws 1st Spec. Sess. 1781, 1840–41 (codified at Minn.Stat. § 65B.49, subd. 3a). Before the 1985 amendment, we considered UM/UIM insurance coverage as tied to the person. *Hanson,* 417 N.W.2d at 95. Injured persons generally could "aggregate or 'stack' the UM or UIM coverages under any insurance policy" in which they were identified as a covered person or an insured. Theodore J. Smetak, *Underinsured Motorist Coverage in Minnesota: Old Precedents in a New Era,* 24 Wm. Mitchell L.Rev. 857, 932 (1998). The 1985 amendment "reflect[ed] a broad policy decision to tie uninsured motorist and other coverage to the particular vehicle involved in an accident." *Hanson,* 417 N.W.2d at 96. In other words, after the 1985 amendment, primary UIM coverage follows the vehicle, rather than the person. The 1985 amendment also eliminated the stacking of UIM coverage, Minn.Stat. § 65B.49, subd. 3a(6) (2008), and "otherwise limited the occupant's ability to collect additional like coverage," *see id.,* subd. 3a(5). *Hanson,* 417 N.W.2d at 96. The legislature passed this amendment "to stem rising insurance costs, it traced in part to prior law requiring expansive interpretation of vehicle insurance coverage." *Id.*

■  Accordingly, subdivision 3a(5) sets "priorities among multiple possible sources" for the recovery of UIM benefits. *Carlson v. Allstate Ins. Co.,* 749 N.W.2d 41, 46 (Minn.2008). In previous cases, we have explained that the first sentence of subdivision 3a(5) generally operates "to require the injured occupant to look first and exclusively to the policy limits on the occupied vehicle" for UM or UIM benefits. *Vue v. State Farm Ins. Cos.,* 582 N.W.2d 264, 267 (Minn.1998); *see also Becker v. State Farm Mut. Auto. Ins. Co.,* 611 N.W.2d 7, 11 (Minn.2000) (stating that subdivision 3a(5) "directs injured occupants to seek UM/UIM coverage initially from the insurer of the motor vehicle they occupied at the time of the accident").

Thus, under the statutory framework, Oczak must look first to the UIM policy limits on the vehicle he was occupying at the time of the accident—the MSI policy insuring Kelly's vehicle. Oczak asserts that he is entitled to additional primary UIM benefits under the West Bend garage business owner's liability policy. The West Bend policy identifies four vehicles and a snowmobile trailer, which are owned by North End and are specifically covered by the policy. As Oczak points out, however, West Bend has admitted that the garage policy also defines "covered autos" for purposes of UIM coverage as including vehicles left with Oczak's business for service or repair, and defines an "insured" for UIM purposes as including anyone "occupying" a covered auto. Because Oczak was occupying a covered auto at the time of the accident, he argues that the $500,000 limit in the West Bend policy constitutes UIM coverage available to him under the primary UIM provision of Minn. Stat. § 65B.49, subd. 3a(5).

Oczak's argument is inconsistent with the two-tiered statutory priority scheme in subdivision 3a(5) addressing primary and

excess UIM coverage. The statute contemplates that primary UIM benefits are available from the policy specifically covering the occupied vehicle. The flaw in Oczak's argument regarding the garage policy is revealed by examining the Allstate policy insuring Oczak's personal vehicle, which contains similar language providing that an "insured auto" for UIM purposes includes a motor vehicle that is "not owned by [the policyholder] or a resident relative, if being operated by [the policyholder] with the owner's permission." Clearly, the statute does not afford primary UIM coverage to Oczak under his personal policy with Allstate while he is operating a customer's vehicle. Rather, the statute provides for the possibility of excess UIM coverage in this situation. *See* Minn.Stat. § 65B.49, subd. 3a(5) (stating that an injured person may seek excess UIM coverage from a personal insurance policy if the injured person is not an insured under the policy covering the occupied vehicle). It would be wholly inconsistent with the statutory priority scheme to interpret "the limit specified for that motor vehicle" in the first sentence of subdivision 3a(5) to mean the UIM limit specified in any policy that extends UIM coverage to a person occupying a motor vehicle not specifically identified or described by the policy. The priority scheme and the provisions in subdivision 3a(5) relating to excess UIM benefits would have no meaning if we accepted the broad implications of Oczak's argument.

Oczak also relies on a court of appeals decision, *Norton v. Tri–State Ins. Co. of Minn.*, 590 N.W.2d 649 (Minn.App.1999), *rev. denied* (Minn. May 26, 1999), to support his argument that there can be more than one policy providing primary UIM benefits under subdivision 3a(5). In *Norton*, at the time of the accident, the injured party was occupying a Chevrolet Caprice that he had recently purchased. *Id.* at 651. After the accident, the injured party made claims for primary UM benefits under two different insurance policies that both specifically described and insured the Caprice: an insurance policy purchased by the injured party after he bought the Caprice, and an insurance policy on the Caprice purchased by the prior owner, which was left in force because part of the purchase price remained unpaid. *Id.* The district court had concluded that the injured claimant could not make UM claims under both policies because of the statutory prohibition on stacking. *Id.; see also* Minn. Stat. § 65B.49, subd. 3a(6).[2] The court of appeals reversed, concluding that the statutory prohibition on stacking applies to adding together the limit of liability for UM and UIM coverages "for two or more motor vehicles," Minn.Stat. § 65B.49, subd. 3(a)6, and "do[es] not govern the question of coverage of two policies written on the same vehicle," *Norton*, 590 N.W.2d at 653. We conclude that *Norton* is factually distinguishable from this case, because the vehicle Oczak was occupying at the time of the accident was not specifically described or identified in the West Bend policy as a covered vehicle.

## C. Dispute over Meaning of Policy

Oczak argues that the language of the West Bend policy uses expansive language that provides primary UIM benefits under

**2.** The anti-stacking provision states: "Regardless of the number of policies involved, vehicles involved, persons covered, claims made, vehicles or premiums shown on the policy, or premiums paid, in no event shall the limit of liability for uninsured and underinsured motorist coverages for two or more motor vehicles be added together to determine the limit of insurance coverage available to an injured person for any one accident." Minn.Stat. § 65B.49, subd. 3a(6).

the circumstances of this case. Oczak suggests that the garage business owner's liability policy is a specialized policy that is distinguishable from the typical motor vehicle insurance policy that covers an individual policyholder's personal vehicle. According to Oczak, the specific underwriting intent of the West Bend policy was to insure his business operations; as a mechanic, he "was required to drive his customers' vehicles to diagnose problems, and it was of primary importance to him that these vehicles would be insured." Therefore, under "the unique factual circumstances of this case," he argues that "[i]t should not be determinative that the West Bend policy did not specifically identify all the vehicles Mr. Oczak's business would eventually service because it would not have been possible," and MSI and West Bend "share co-primary underinsurance liability."

The West Bend schedule of coverages page provides UIM coverage for "covered autos," which under the "Garage Coverage Form" portion of the policy includes "autos" left with the insured for service, repair, storage, or safekeeping. The policy sets forth the following priorities "[i]f an 'insured' sustains 'bodily injury' while 'occupying' a vehicle not owned by that person":

| First Priority | The policy affording Uninsured Motorists Coverage or Underinsured Motorists Coverage to the vehicle the "insured" was "occupying" at the time of the "accident." |
|---|---|
| Second Priority | Any Coverage Form or policy affording Uninsured Motorists Coverage or Underinsured Motorists Coverage to the "insured" as a named insured or family member. |

Oczak contends that he is entitled to primary UIM coverage under the first priority, because at the time of the accident he qualified as an "insured" who was "occupying" a "covered auto." But the West Bend policy specifically states that "[w]here there is applicable insurance available under the first priority," any coverage provided by West Bend "with re-

spect to a vehicle you do not own shall be excess over any collectible uninsured or underinsured motorists insurance providing coverage on a primary basis." Because Oczak has collected UIM benefits on a primary basis from the MSI policy insuring his customer's vehicle, the clear language of the West Bend policy precludes the UIM benefits that Oczak seeks.

## D. Reasonable Expectations Doctrine

Oczak also relies on the reasonable expectations doctrine for access to primary UIM benefits under the West Bend policy. The reasonable expectations doctrine may in certain limited situations protect the reasonable expectations of the insured with respect to coverage where the literal terms and conditions of the policy bar the claim. *Atwater Creamery Co. v. W. Nat'l Mut. Ins. Co.*, 366 N.W.2d 271, 277–78 (Minn.1985) (concluding that "where major exclusions are hidden in the definitions section, the insured should be held only to reasonable knowledge of the literal terms and conditions"). We recently clarified the scope of the reasonable expectations doctrine in *Carlson v. Allstate Ins. Co.*, 749 N.W.2d 41 (Minn.2008). In *Carlson,* we limited the use of the reasonable expectations doctrine to "resolving ambiguity" in policy terms "and for correcting extreme situations," such as "where a party's coverage is significantly different from what the party reasonably believes it has paid for and where the only notice the party has of that difference is in an obscure and unexpected provision." *Id.* at 49. We conclude that the reasonable expectations doctrine does not apply here. There is no ambiguity in the language of the West Bend policy. The policy clearly states that any UIM coverage for a non-owned vehicle is excess over any other collectible primary coverage.

We conclude that under Minn.Stat. § 65B.49, subd. 3a(5), primary UIM benefits are available from the policy specifically covering the occupied vehicle. Because Oczak collected primary UIM benefits from MSI, the insurer of the vehicle he was occupying at the time of the accident, Oczak is not entitled to primary UIM benefits from the West Bend garage business owner's liability policy under the statute or the language of the policy.

## II.

■■■■ Appellants Oczak and Allstate argue that Oczak is an "insured" for the purposes of the No–Fault Act under Minn. Stat. § 65B.49, subd. 3a(5), and therefore he is entitled to excess UIM coverage under the West Bend policy. Appellants also argue that the court of appeals erred in concluding that the West Bend policy does not provide excess UIM coverage to Oczak because he is not a named insured on the policy.

### A. Dispute over Meaning of Subdivision 3a(5)

The relevant portion of subdivision 3a(5) is the second sentence, which provides:

[I]f the injured person is occupying a motor vehicle of which the injured person is not an insured, the injured person may be entitled to excess insurance protection afforded by a policy in which the injured party is otherwise insured.

And the third sentence, which provides:

The excess insurance protection is limited to the extent of covered damages sustained, and further is available only to the extent by which the limit of liability for like coverage applicable to any one motor vehicle listed on the automobile insurance policy of which the injured person is an insured exceeds the limit of liability of the coverage available to the injured person from the occupied motor vehicle.

Minn.Stat. § 65B.49, subd. 3a(5). Thus, the second sentence sets forth the general principle, subject to certain limitations, that an injured person may recover excess UIM protection under a personal policy when that person is not an "insured" under the policy covering the occupied vehicle, but is "insured" under a different policy from which he or she seeks excess coverage.[3] The third sentence of subdivision 3a(5) sets forth the limitations to that rule. In this case, North End is the named insured on the West Bend policy.

West Bend argues that Oczak is not an "insured" under the West Bend policy for the purposes of section 65B.49, subd. 3a(5), because he is not a *"named* insured" on the policy, and therefore the policy does not provide excess UIM coverage. West Bend relies on our decision in *Becker v. State Farm Mut. Auto. Ins. Co.,* 611 N.W.2d 7 (Minn.2000), to support its position.

In *Becker,* we considered the meaning of the word "insured" in subdivision 3a(5). Becker was involved in a car-truck accident when the truck she was driving was struck by a car that crossed the center line. *Becker,* 611 N.W.2d at 8. At the time of the accident, Becker was driving a truck

---

**3.** Commentator Theodore J. Smetak explains:

[Subdivision 3a(5)] attempted to ensure that the minimum level of coverage that would be available would be the limit of UM or UIM coverage purchased by the policyholder. This intention is evidenced by the fact that a host passenger is able to look to his or her own personal policy for excess coverage when the coverage on the occupied vehicle is issued in an amount less than the insured's UM or UIM coverage limits.

*Underinsured Motorist Coverage in Minnesota: Old Precedents in a New Era,* 24 Wm. Mitchell L.Rev. 857, 934 (1998).

owned by her employer. *Id.* Becker collected UM/UIM coverage from her employer's insurer. *Id.* at 8–9. Because Becker claimed her damages exceeded the policy benefits she received, she sought excess UM/UIM benefits from her personal insurer State Farm. *Id.* at 9. State Farm denied the claim, and Becker commenced legal action. *Id.* The district court granted summary judgment in favor of State Farm on the ground that Becker was an "insured" under her employer's insurance policy, and thus she was limited to the benefits of that policy. *Id.*

Becker argued that the district court erred because she was not an "insured" with respect to the occupied vehicle, and therefore she was eligible for excess UIM coverage under her personal policy with State Farm. *Id.* at 10–11. State Farm argued that as an employee driving a covered auto in the course of her employment, Becker should be considered an "insured" of the motor vehicle she was driving and thus was ineligible for excess UIM coverage. *Id.* at 11.

We rejected State Farm's argument, and held that the meaning of "insured" in Minn.Stat. § 65B.49, subd. 3a(5), is limited to the named insured, or spouse, minor, or relative of the named insured set forth in the policy of the occupied vehicle. *Becker,* 611 N.W.2d at 13. We concluded that Becker's status as an employee had nothing to do with her entitlement to excess UIM coverage; rather, it was her status as an occupant of the vehicle that enabled her to seek UIM coverage. *Id.* at 12–13. Consequently, Becker was allowed to access her personal insurance policy's excess UIM coverage, as she was not a "named insured" under her employer's policy and, therefore, "not an insured" under subdivision 3a(5). 611 N.W.2d at 13.

Appellants and the dissent contend that the term "otherwise insured" in the second sentence of subdivision 3a(5) should be given a more expansive meaning that includes not only the named insured, but also all insureds covered by a policy. But the phrase "otherwise insured" does not change the meaning of "insured" in the statute. It is true that *Becker* did not address this exact situation. *Becker* addressed the meaning of "an insured" in the context of UM/UIM coverage available from the occupied vehicle. Nonetheless, the meaning of "insured" in subdivision 3a(5) does not change depending on the context. While the second sentence of subdivision 3a(5) indicates that excess UIM coverage may be available under "a policy in which the injured party is *otherwise insured,*" the third sentence specifies that excess UIM coverage "is available only to the extent by which the limit of liability for like coverage applicable to any one motor vehicle listed on the automobile insurance policy of which the injured person is *an insured* exceeds the limit of liability of the coverage available to the injured person from the occupied motor vehicle." Minn.Stat. § 65B.49, subd. 3a(5) (emphasis added). Therefore, the statute makes clear that excess UIM coverage is available only under a policy of which the injured person is "an insured." Under the reading of the statute advanced by appellants and the dissent, the phrase "an insured" would have different meanings in the same subdivision of the same statute.

Based on our holding in *Becker,* we conclude that "insured" in subdivision 3a(5) means the named insured, spouse, or resident household relatives. Because Oczak was not a "named insured" under the West Bend policy, he was not an "insured" within the meaning of subdivision 3a(5), and is not entitled to excess UIM coverage under the statute.

**B. Dispute over Meaning of Policy**

█ Allstate contends that under Minn.Stat. § 65B.49, subd. 7 (2008), insur-

ers can provide more coverage than is required by the No–Fault Act, and that even though subdivision 3a(5) limits excess coverage to "named insureds," West Bend's policy contains language expanding the scope of its excess coverage to include all individuals covered by the policy. Allstate cites *Carlson v. Allstate Ins. Co.*, 749 N.W.2d 41 (Minn.2008), to support its argument.

In *Carlson*, appellant was a pedestrian who was struck by a negligent uninsured motorist and sought UM coverage under his father's automobile insurance policy. *Carlson*, 749 N.W.2d at 43. We first addressed the dispute over the meaning of the language in the Allstate policy. *Id.* at 45. We concluded that when an insurance policy limits UM coverage to the "policyholder" identified on the declarations page, and the declarations page lists only "named insureds" and "drivers," that the term "policyholder" refers unambiguously to the "named insureds." *Id.* at 44–46. Because appellant was not a "named insured" under the policy, he was not entitled to UM coverage. *Id.* at 46.

We next addressed whether the portion of the provision in Minn.Stat. § 65B.49, subd. 3a(5), that applies to pedestrians precludes the limitation of coverage set forth in the Allstate policy's definition of "insured." *Id.* We observed that subdivision 3a(5) was not intended to define mandatory minimum coverage but rather to establish priority among existing sources of coverage, and therefore the No–Fault Act does not preclude a different definition of "insured" in an insurance policy. *Id.* We concluded that because the language of the policy afforded appellant no coverage in these circumstances, neither did subdivision 3a(5). *Id.* at 47.

■ Applying *Carlson*, we must analyze whether the language of the West Bend policy provides broader coverage than is provided in subdivision 3a(5). The relevant portion of the West Bend policy is set forth in the "Minnesota Uninsured and Underinsured Motorists Coverage" endorsement. Specifically, paragraph E.1.b. provides that "[i]f an insured sustains bodily injury while occupying a vehicle not owned by that person," (internal quotations omitted) that certain priorities of recovery apply. The first priority is the policy affording UIM coverage to the vehicle the insured was occupying at the time of the accident. In this case, Oczak was occupying the Kelly vehicle at the time of the accident; and the Kelly vehicle was insured by MSI. Because the MSI policy afforded UIM coverage to Oczak as an occupant of the Kelly vehicle, the MSI policy is the first priority under the West Bend policy. Oczak has settled with MSI and, therefore, first priority is not applicable. The second priority is any policy affording UIM coverage to the insured as a "named insured or family member." It is undisputed that Oczak is not a "named insured or family member," and therefore under the West Bend policy the second priority does not apply to the West Bend policy, but it does apply to the Allstate policy.

■ The dissent argues that if the policy language excludes Oczak and all other North End employees from receiving excess UIM coverage for which a premium was paid, that the coverage provided is illusory and nonexistent. But North End did not pay any additional premium for its UIM coverage. The UIM coverage was included within the base premium for liability insurance. More importantly, the UIM coverage under the West Bend policy may be limited, but it is not illusory. Specifically, if Oczak, or any employee of North End was driving any of the five covered autos listed on the declarations page of the policy, and was involved in an

accident with another vehicle that was at-fault and underinsured, then West Bend would be obligated to provide UIM bene-fits as first priority coverage under the policy. Thus, it is incorrect to say that the UIM coverage is illusory.

The language in the policy that limits the availability of excess UIM coverage to "named insureds and family members" simply tracks the language of Minn.Stat. § 65B.49, subd. 3a(5). *See Becker,* 611 N.W.2d at 13 (holding that "the correct interpretation of 'insured' " as used in sub-division 3a(5) is limited to the "named insured, or spouse, minor, or resident rela-tive of the named insured"). There is no basis under the policy language to extend excess UIM coverage to a person who is not a "named insured or family member."

■ The obstacle to recovery here is not self-negating policy language; the ob-stacle is the designation of "North End 66, Inc." as the sole "named insured" on the policy. The dissent essentially proposes rewriting the policy to make Oczak a "named insured," contrary to our long-standing principles governing the interpre-tation of insurance policies. In the ab-sence of ambiguity in the policy language or an "extreme situation" that calls for application of the reasonable expectations doctrine, *Carlson,* 749 N.W.2d at 49, the language of an insurance policy "must be given its plain and ordinary meaning," *Travelers Indem. Co. v. Bloomington Steel & Supply Co.,* 718 N.W.2d 888, 894 (Minn. 2006). *See also Kwong v. Depositors Ins. Co.,* 627 N.W.2d 52, 55 (Minn.2001) (recog-nizing that "so long as an insurance con-tract does not omit statutorily mandated coverage or otherwise contravene the ap-plicable statutes, the contract governs the insurer's liability"). In this case, the poli-cy clearly and unambiguously states that North End is the only "named insured" under the policy. There is no basis to

modify the policy to effectively add Oczak and other North End employees as "named insureds."

## C. Sole Shareholder Exception

■ Oczak also argues he should be considered a "named insured" under the West Bend policy because of his status as the owner of North End, the actual "named insured" under the policy. He relies on *Roepke v. W. Nat'l Mut. Ins. Co.,* 302 N.W.2d 350 (Minn.1981), to support his argument. In *Roepke,* the insured, who was driving a company vehicle, was killed in a car accident with another vehicle. *Id.* at 351. The insured was president and sole shareholder of the corporation, which had insurance providing for survivors' ben-efits in the amount of $10,000 on six differ-ent vehicles all covered under the umbrella policy. *Id.* The corporation was listed as the "named insured" on the policy. *Id.* The defendant insurer argued that because the decedent was not the "named insured" he was not an "insured" under the policy and his survivors were not entitled to stack the six different coverages, but were limit-ed to the coverage on the vehicle involved in the accident. *Id.* at 351–52. We "re-verse pierced" the corporate veil and con-cluded that the decedent was an "insured." *Id.* at 352. We specifically noted that *Roepke* was limited to the particular facts of the case (specifically, the insured's posi-tion as the president and sole shareholder of the corporation, his extensive personal use of the insured vehicles, and the court's conclusion that no shareholder or creditor would be adversely affected by the reverse pierce). *Id.* at 353; *see also Kuennen v. Citizens Sec. Mut. Ins. Co.,* 330 N.W.2d 886, 886 (Minn.1983) (declining to extend *Roepke* to the majority shareholder of a corporation insured under a policy where the corporation was the "named insured"

and only two of the corporate vehicles were used as family vehicles).

Although Oczak was the owner of North End, the vehicle he was occupying at the time of the accident was not owned by the corporation. As we noted in *Kuennen*, personal use of corporate property is important in a reverse-piercing case because it indicates "the degree of identity between a shareholder and a corporation. Where that degree is not high the alter ego theory which underlies the doctrine of piercing the corporate veil cannot operate." *Kuennen*, 330 N.W.2d at 887. Moreover, Oczak's situation is distinguishable from the sole proprietorship cases because North End was a corporation and, unlike a sole proprietorship, a corporation is a separate legal entity from its owners and shareholders. *Gabrelcik v. Nat'l Indem. Co.*, 269 Minn. 445, 448, 131 N.W.2d 534, 536 (1964); *see also Gen. Cas. Co. of Wis. v. Outdoor Concepts*, 667 N.W.2d 441, 443–44 (Minn.App.2003) (concluding that sole proprietor qualified as "named insured" even though business was actual

"named insured" on policy). *But see Jensen v. United Fire & Cas. Co.*, 524 N.W.2d 536, 539–40 (Minn.App.1994), *rev. denied* (Minn. Feb. 3, 1995).[4] For these reasons, we conclude that Oczak was acting as an employee of North End, and not the corporation's "alter ego," when he took cars left for repair out for diagnostic road tests. Consequently, he is not a "named insured" under the policy.

Because we determine that the West Bend policy does not provide excess UIM coverage, we need not address Allstate's argument that the court should apply a closeness to the risk analysis to determine whether Allstate's or West Bend's coverage has priority.

Affirmed.

GILDEA, J., took no part in the consideration or decision of this case.

PAGE, Justice (concurring in part, dissenting in part).

I respectfully dissent. While I agree with the court's conclusion that primary

---

4. Our conclusion is consistent with a number of other jurisdictions that do not extend "named insured" status to employees or shareholders of a corporation. *See Am. States Ins. Co. v. C & G Contracting, Inc.*, 186 Ariz. 421, 924 P.2d 111 (Ariz.Ct.App.1996) (holding that "a reasonably intelligent consumer knows that he is neither related to a corporation by blood, marriage or adoption nor a resident of its household"); *Pearcy v. Travelers Indem. Co.*, 429 So.2d 1298, 1298–99 (Fla. Dist.Ct.App.1983) (observing that the listing of an employee as an operator of the corporation's vehicle, on a policy of insurance issued to the corporation, did not make that employee a "named insured"); *Hogan v. Mayor & Aldermen of Savannah*, 171 Ga.App. 671, 320 S.E.2d 555, 557–58 (1984) (distinguishing *Roepke*); *Foote v. Royal Ins. Co. of Am.*, 88 Hawai'i 122, 962 P.2d 1004, 1007 (Haw.Ct. App.1998) (holding sole shareholder was not equivalent to "family member" where corporation was "named insured"); *Sears v. Wilson*, 10 Kan.App.2d 494, 704 P.2d 389, 392 (1985) (holding that "family member" provi-

sion of policy does not extend to family members of corporate employees where corporation is "named insured"); *Kovac v. State Farm Mut. Auto. Ins. Co.*, 800 So.2d 78, 80 (La.Ct.App.2001) (holding that sole shareholder and officer of corporation, the "named insured," was not an "insured" while driving a vehicle not covered by the policy); *Cutter v. Maine Bonding & Cas. Co.*, 133 N.H. 569, 579 A.2d 804, 807 (1990) (rejecting argument that employees are "family members" under corporate policy); *Buckner v. MVAIC*, 66 N.Y.2d 211, 495 N.Y.S.2d 952, 486 N.E.2d 810, 812 (1985) (observing that sole shareholder was not legally equivalent to "named insured" corporation); *Dixon v. Gunter*, 636 S.W.2d 437 (Tenn.Ct.App.1982) (reiterating that individual owners of a corporation are not, as such, insureds under a policy issued to the corporation); *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 457 (Tex.1997) (concluding that corporation's status as "named insured" did not extend to president and sole shareholder).

underinsured motorist (UIM) coverage is unavailable to Oczak from the West Bend policy covering North End under our rule precluding co-primary coverages, I disagree with the court's conclusion that the West Bend policy does not provide excess UIM coverage.

The court concludes that under Minn. Stat. § 65B.49, subd. 3a(5) (2008), the excess UIM coverage referenced in West Bend's policy is only available to "named insureds." The "named insured" on the West Bend policy is "North End 66, Inc." Yet, the policy was intended to cover North End employees driving customers' vehicles, and neither Oczak nor any other employee of North End is listed in the policy as a "named insured." Because Oczak is not a "named insured" on the West Bend policy, the court holds that the policy does not provide excess UIM coverage in this case. If, in fact, as the court holds, the policy language excludes Oczak and all other North End employees from receiving excess coverage, North End, through Oczak, its owner, paid a premium for illusory and nonexistent coverage. The coverage is illusory and nonexistent because, for all accidents in which a North End employee (including Oczak) is driving a customer's vehicle,[1] the employee will never under any circumstances be the "named insured."

In its "Minnesota Uninsured and Underinsured Motorists Coverage" endorsement ¶ E.1.b(1)(b), the policy provides:

*Any insurance we provide with respect to a vehicle you do not own shall be excess over any collectible uninsured or underinsured motorists insurance providing coverage on a primary basis.*

If the coverage under this coverage form is provided:

. . . .

(ii) On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our total limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

(Emphasis added.)

The court's decision reads the words, "Any insurance we provide with respect to a vehicle you do not own shall be excess over any collectible uninsured or underinsured motorists insurance" out of the policy. But whenever possible, we construe liability insurance contracts so as not to provide illusory coverage. *Hoeschen v. South Carolina Ins. Co.*, 378 N.W.2d 796, 799 (Minn.1985) (citation omitted). The court's construction makes it impossible for the West Bend policy to ever provide UIM coverage for North End employees driving an underinsured customer vehicle, notwithstanding the fact that the policy was intended to provide coverage for customer vehicles. The court suggests that the West Bend coverage is not illusory because it is possible for West Bend to be obligated to provide UIM benefits as primary coverage under the policy when an employee of North End is driving a motor vehicle listed on the policy's declarations page and is involved in an accident with an at-fault underinsured driver. The fact that the West Bend policy may provide coverage for an employee driving a vehicle listed on the policy's declarations page says nothing about the illusory nature of the West Bend policy as it relates to customer vehicles. Customer vehicles will never be listed on the declarations page of

---

1. The record is clear that the West Bend policy was intended to provide coverage for

customer vehicles.

the policy and the employee driving the vehicle will never be a "named insured" under the policy. The end result of the court's construction is that North End has purchased coverage that does not exist.

The court, relying on *Becker v. State Farm Mut. Auto. Ins. Co.*, concludes that the correct interpretation of "otherwise insured" is limited to the "named insured." 611 N.W.2d 7 (Minn.2000). However, the court simply plucks that conclusion out of *Becker* divorced from its context and limited applicability. In *Becker*, we were interpreting the second sentence of subdivision 3a(5), which reads, "However, if the injured person is occupying a motor vehicle of which the injured person is not *an insured*, the injured person may be entitled to excess insurance protection afforded by a policy in which the injured party is otherwise insured." Minn.Stat. § 65B.49 sub. 3a(5) (emphasis added). We held that "an insured" in the context of first priority coverage—UIM coverage available from the occupied vehicle—means a "named insured" and concluded that an employee must be a "named insured" on her company's insurance policy in order to be precluded from accessing her personal UIM coverage. *See Becker*, 611 N.W.2d at 9 (State Farm moved for summary judgment, claiming that Becker is "*an insured* under her employer's insurance policy on the occupied vehicle" (emphasis added)); *see also Carlson v. Allstate Ins. Co.*, 734 N.W.2d 695, 702 (Minn.App.2007), *aff'd*, 749 N.W.2d 41 (Minn.2008) ("Becker construed the term '*an insured*' as it appears in the first paragraph of section 65B.49, subdivision 3a(5), not 'is insured,' which is the term used in the second paragraph of section 65B.49, subdivision 3a(5)" (emphasis added)).

The case before the court today deals with second priority coverage. Therefore, the question is not whether Oczak is "an insured" under the primary vehicle's policy, but rather whether Oczak qualifies as "otherwise insured" under West Bend's policy. *Becker* does not define or even consider the meaning of the term "otherwise insured" as set out in section 65B.49, subdivision 3a(5). The policy discussion in *Becker* does, however, provide the court with guidance. In *Becker*, we noted that the purpose of the statutory framework was to give "motor vehicle owners the ability to select and purchase the amount of UM/UIM coverage they desire in excess of the mandatory minimums, and then access that coverage in the event they are injured while occupying a vehicle owned by someone who has purchased only the minimum UM/UIM coverage." *Becker*, 611 N.W.2d at 13. In *Carlson*, we went on to make clear that subdivision 3a(5) is intended as a list of priorities, rather than as a basic definition of "insured"; therefore, the policy language of each individual policy controls and not the statute. *Carlson*, 749 N.W.2d at 46–47. In other words, subdivision 3a(5) defines the source of the coverage, not the scope of the coverage. *See id.* at 74 n. 4.

With today's decision, the court ignores *Becker* and *Carlson* and uses subdivision 3a(5) to define the scope of coverage and not the source of coverage. The court also misapplies *Becker* to define "otherwise insured" when a careful reading of *Becker* reveals that *Becker* was limited to defining "an insured" and did not discuss the term "otherwise insured." Moreover, subdivision 3a(5)'s plain language leads to the conclusion that someone who is "otherwise insured" is not required to be "an insured." Here, Oczak through his company North End bought coverage from West Bend to provide coverage, including excess UIM coverage, for situations involving North End employees driving "customer vehicles." West Bend intended the North End policy to cover North End employees

driving customer vehicles. Neither section 65B.49, subdivision 3a(5), by its express language or its intended purpose precludes such coverage.

I would hold that Oczak qualifies as "otherwise insured" under the West Bend policy and is entitled to the benefit of the premium North End paid to West Bend for excess UIM coverage. As a result, I would conclude that Oczak is entitled to receive excess UIM benefits under that policy.

ANDERSON, PAUL H., Justice (concurring and dissenting).

I join in the concurrence and dissent of Justice Page.