**AUSTIN MUTUAL INSURANCE COMPANY, Petitioner, Appellant,**

v.

**James J. TEMPLIN, Respondent.**

No. C7–88–420.

Court of Appeals of Minnesota.

Feb. 7, 1989.
Review Denied April 24, 1989.

George Charles Hottinger, Dale O. Thornsjo, Chadwick, Johnson & Condon, P.A., Minneapolis, for petitioner, appellant.

John W. Carey, Steven D. Emmings, Sieben, Grose, Von Holtum, McCoy & Carey, Ltd., Fairfax, for respondent.

Heard, considered, and decided by FOLEY, P.J., and FORSBERG and STONE,* JJ.

## OPINION

BRUCE C. STONE, Judge.

Respondent James J. Templin submitted a claim to appellant Austin Mutual Insurance Company for stacked underinsured motorist (UIM) benefits in the amount of $200,000. Austin Mutual denied Templin's claim and his request for arbitration and commenced a declaratory action against Templin on the issues of arbitration and stacking.

Austin Mutual appealed the trial court's denial of its motion for summary judgment. This court questioned appealability and dismissed the case. The supreme court has now remanded the case for our consideration. 428 N.W.2d 387.

## FACTS

On August 29, 1986, Respondent James J. Templin was injured while riding as a passenger in a car driven by Timothy John Lauwagie and owned by Timothy's mother, Carol May Lauwagie. In December 1986, Templin submitted a claim to Austin Mutual for $200,000 in stacked underinsured motorist benefits. Templin was insured under policies purchased by his father, William J. Templin. The policies, issued to William Templin on July 11, 1986, a little over one month before the accident, had separate uninsured and underinsured motorist coverage provisions. They also included an option to stack the coverages. Mr. Templin opted to stack the $100,000 uninsured and underinsured coverages on his 1979 and 1983 Dodges.

In 1985, the Minnesota Legislature enacted two regular session and two special session amendments to the No–Fault Act. Only three are relevant here. Chapter 168, passed at the regular session, made underinsured motorist coverage mandatory and prohibited "stacking" of uninsured and underinsured coverages. *See* 1985 Minn. Laws ch. 168, § 11 (amending Minn.Stat. § 65B.49, subd. 4 (1984)).

During the 1985 special session, the legislature passed special session chapters 10 and 13. Chapter 13 allowed insurers to offer an election to stack but otherwise prohibited stacking. *See* 1985 Minn.Laws 1st Spec. Sess. ch. 13, § 191. Chapter 10, however, repealed section 65B.49, subd. 4, *see* 1985 Minn.Laws 1st Spec. Sess. ch. 10, § 123, subd. 5, and prohibited stacking. *Id.,* § 68, *codified as* Minn.Stat. § 65B.49, subd. 3a(6) (1986).

After passage of these amendments, there was much confusion as to whether stacking still existed in Minnesota until this court held that the 1985 Legislature intended to enact anti-stacking language. *In re State Farm Mutual Automobile Insurance Co.,* 392 N.W.2d 558, 567 (Minn.Ct. App.1986). Relying on *In re State Farm,* Austin Mutual argues that Templin should be prohibited from stacking his underinsured motorist coverage.

On appeal from denial of its summary judgment motion, Austin Mutual contends

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

that the trial court incorrectly allowed Templin to stack his UIM coverage.

## ISSUE

May an insured stack coverages available under separate underinsured motorist policies when language in the policy in effect at the time of the accident provides for stacking?

## ANALYSIS

Orders issued under Minnesota's Declaratory Judgment Act are reviewable. Minn. Stat. § 557.07 (1986). The interpretation and construction of an insurance policy is a question of law. *Iowa Kemper Insurance Co. v. Stone*, 269 N.W.2d 885, 886–87 (Minn.1978). Thus, we are not bound by the trial court's conclusions and may independently determine the issue in this case. *See A.J. Chromy Construction Co. v. Commercial Mechanical Services, Inc.*, 260 N.W.2d 579, 582 (Minn.1977).

Before 1985, an insured in Minnesota was permitted to add together the coverage limits of two or more policies when the insured's losses were not fully covered by one policy. *See Sobania v. Integrity Mutual Insurance Co.*, 371 N.W.2d 197 (Minn. 1985). Commonly called "stacking," this process of adding coverages together occurs when a court orders the "pyramiding of separate first-party coverages attributable to two or more vehicles *despite* policy language prohibiting stacking." *Rusthoven v. Commercial Standard Insurance Co.*, 387 N.W.2d 642, 644 n. 1 (Minn.1986) (emphasis added).

At the 1985 special session, the legislature first passed Chapter 13. It read, in pertinent part:

> Unless a policy holder makes a specific election to have two or more policies added together, the limit of liability of uninsured and underinsured motorist coverages for two or more motor vehicles may not be added together to determine the limit of insurance coverage available to an injured person for any one accident. An insurer may notify policy holders that they may elect to have two or more policies added together.

1985 Minn.Laws 1st Spec. Sess. ch. 13, § 191. Subsequently, special session chapter 10 was passed. It read, in pertinent part:

> Regardless of the number of policies involved, vehicles involved, persons covered, claims made, vehicles or premiums shown on the policy, or premiums paid, in no event shall the limit of liability for uninsured and underinsured motorist coverages for two or more vehicles be added together to determine the limit of insurance coverage available to an injured person for any one accident.

1985 Minn.Laws 1st Spec. Sess. ch. 10, § 68, *codified as* Minn.Stat. § 65B.49, subd. 3a(6) (1986). On their face, the two laws appear to be inconsistent.

It is our duty to construe special session chapters 10 and 13 so as to give effect to both, if possible. Minn.Stat. § 645.26, subd. 1 (1988). We feel the two provisions can be read together.

Chapter 10 purports to outlaw stacking while chapter 13 allows an insured to add together underinsured motorist coverages where the parties voluntarily contract for it. We believe that chapter 10 was a legislative prohibition against the judicially imposed, court ordered stacking that existed before the 1985 amendments.

Austin Mutual argues that this court's decision in a related case, *In re State Farm*, controls. Austin Mutual contends that under *In re State Farm*, no type of stacking now exists in Minnesota. We find that *In re State Farm* is distinguishable from the situation presented here.

*In re State Farm* declared the then existing state of the law with respect to stacking. *In re State Farm* was not factually based. Here, after enactment of chapters 10 and 13, the parties entered into the contract that was in effect when James Templin was injured in the accident. The policy specifically allows stacking, and provides, in relevant part:

UNINSURED/UNDERINSURED MOTORISTS COVERAGE AMENDMENT— MINNESOTA

\*   \*   \*   \*   \*   \*

LIMIT OF LIABILITY—UNDERINSURED MOTORISTS COVERAGE

With respect to the Underinsured Motorists Coverage indicated as applicable in the Schedule or in the Declarations for all damages resulting from any one accident with an underinsured motor vehicle:

1. Our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of bodily injury sustained by any one person in any one accident *is the sum of the limits of liability shown in the Schedule or in the Declarations for "each person".*

(Emphasis added.) In view of this contractual agreement, we feel that *In re State Farm* does not control the outcome of this case.

Austin Mutual argues, however, that once this court decided *In re State Farm*, all policies allowing stacking, including Templin's, violated section 65B.49, subd. 3a(6) and were thus void. Templin claims that he is entitled to stack the benefits available under his father's Austin Mutual policy because of specific policy language allowing him to do so.

We agree that *In re State Farm* held that chapter 10 outlawed stacking. Nevertheless, even if chapter 10 outlawed *judicially imposed* stacking, it did not outlaw contracting for the right to add together underinsured motorist coverages.

"[I]f the policy itself sets the limit of the insurer's liability as the sum of the limits applicable to each covered vehicle, there is no necessity to resort to the stacking principle." *Rusthoven*, 387 N.W.2d at 644 n. 1. The contractual agreement here set forth the limit of coverage as the sum of limits applicable to the policies on William Templin's two trucks. Because the two parties have contracted to "stack," we need not engage in court-imposed stacking. Rather, the parties should be allowed to fulfill their agreement despite the legislature's having outlawed court-imposed stacking. Templin should be allowed to add his coverages together.

In addition, Minn.Stat. § 65B.49, subd. 7 (1986) allows insurers to provide additional coverage. It reads:

Nothing in sections 65B.41 and 65B.71 shall be construed as preventing the insurer from offering other benefits or coverages in addition to those required to be offered under this section.

Thus, it appears the legislature provided for just the situation presented here. It eliminated court-imposed stacking with chapter 10, but it still allowed for parties to contract to stack by leaving section 65B.49, subd. 7 intact.

We recently addressed an issue similar to the one presented here. *See Ballavance v. Safeco Insurance Co.*, 432 N.W.2d 185 (Minn.Ct.App.1988). We find that *Ballavance* is distinguishable.

In *Ballavance*, the insurer only offered the insured an option to stack three months *after* the insured was injured. The policy in force at the time of the accident prohibited stacking. This court found that because both Minnesota law *and* the insured's policy in effect at the time of the accident prohibited stacking, Ballavance could not stack his coverage. *Id.* at 188.

Here, the policy in effect at the time of the accident specifically provided that Templin was entitled to stack his coverages. *Ballavance* does not apply.

Austin Mutual freely admits that it gave William Templin the option of stacking his UIM coverages but argues that because of the confusion caused by the 1985 stacking amendments, it should not be bound by the policy provision allowing Templin to stack. Austin Mutual also argues that the Commissioner of Insurance erroneously required insurers to give insureds the option of stacking after the 1985 amendments, thus prohibiting enforcement of the Templin policy's stacking provision. We find these arguments unpersuasive.

DECISION

The 1985 Legislature outlawed the practice in which courts order stacking despite insurance policy language prohibiting it, but permitted stacking by agreement of policyholder and insurance company. The

trial court correctly allowed Templin to add together his underinsured motorist coverages pursuant to contractual language in the policy entered into by the parties.

AFFIRMED.