Steve **NORTON**, Appellant,

v.

**TRI–STATE INSURANCE COMPANY OF MINNESOTA, Respondent.**

No. C1–98–1614.

Court of Appeals of Minnesota.

March 30, 1999.

Review Denied May 26, 1999.

L. Michael Hall, L. Michael Hall, P.A., St. Cloud, MN (for appellant).

Theodore J. Smetak, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis, MN (for respondent).

Considered and decided by HALBROOKS, Presiding Judge, CRIPPEN, Judge, and MULALLY, Judge.

## OPINION

CRIPPEN, Judge.

In this declaratory judgment proceeding, appellant Steve Norton contends that he has first-party coverage with two companies for injuries sustained in a December 1994 collision of an uninsured motorist with appellant's Chevrolet automobile. Payment of Norton's claims has been tendered by Austin Mutual Insurance Company, whose policy Norton purchased after he bought the Chevrolet in August 1994. Respondent Tri–State Insurance Company of Minnesota provided uncommon coverage on the same vehicle, its policy having been purchased by the prior owner of the Chevrolet and left in force by the owner because part of the purchase price remained unpaid.[1]

Appellant disputes the trial court's judgment that it would constitute unlawful judicial stacking to enforce Tri–State's coverage. We reverse, determining that the doctrine of stacking does not deal with two policies written on the same vehicle. We also reverse alternative trial court holdings upholding arguments of Tri–State that its policy contains language whereby (a) coverage is barred for an insured occupant, other than the named insured, who owns the insured vehicle, and (b) it is absolved from the coverage claim because Austin Mutual's policy was closest to the risk; Tri–State's policy contains no language (a) limiting coverage for an insured occupant who is owner of the insured vehicle or (b) permitting the determination that Austin Mutual's coverage might be considered either exclusive (as respondent represented to the trial court) or primary (as has prompted other applications of the closest-to-the-risk doctrine).

Because the policies of both Austin Mutual and Tri–State include an other-insurance clause that limits their coverage to a proportionate share of the maximum recovery, based on the limits of coverage in each policy, we remand for a determination of the proportion of appellant's claims that must be paid by respondent Tri–State.

## FACTS

In August 1994, appellant Norton purchased an automobile, a 1977 Chevrolet Caprice, from Reuben Sanken. Appellant possessed and used the automobile while completing payments to Sanken. Both appellant and Sanken carried insurance on the vehicle. Appellant's Austin Mutual policy had uninsured motorist benefits of $50,000 per person and $100,000 per occurrence. Sanken's Tri–State policy had uninsured motorist benefits of $100,000 per person and $300,000 per occurrence.

On December 3, 1994, an uninsured motorist collided with the Caprice, severely injuring appellant and others in his family. Appellant made a claim on behalf of himself and his family and Austin Mutual tendered benefits.

Appellant also made a claim for uninsured motorist benefits under Sanken's Tri–State policy. Tri–State initially advised appellant that it would provide UM coverage pursuant to the policy but subsequently reversed its position and denied the claim. Appellant sought a declaratory judgment stating that he was entitled to UM benefits from Tri–State. The trial court held that appellant was not entitled to benefits from Tri–State, first because of judicial stacking laws and second because of contentions that the policy contained language prohibiting coverage.

## ISSUES

Do rules of law on stacking, the claim that first-party coverage on multiple owned vehicles enlarges the exposure for an incident involving any one of them, govern the question of coverage of two policies written on the same vehicle?

Has Tri–State identified policy language that eliminates appellant's coverage or demands either exclusive or primary coverage under the policy purchased by appellant?

## ANALYSIS

1. **Standard of review**

 ▆▆▆ The trial court's application of a statute to undisputed facts is a conclusion of

1. The trial court held and the parties agree that Norton owned the vehicle at the time of the collision, notwithstanding the arrangement for delayed payment of part of the purchase price.

law; therefore, this court need not defer to the district court's decision. *A.J. Chromy Constr. Co. v. Commercial Mech. Servs., Inc.*, 260 N.W.2d 579, 582 (Minn.1977). When the parties agree to the underlying facts and only dispute the interpretation of an insurance policy, we review de novo whether the trial court properly interpreted and applied the law to the facts. *Magnetic Data, Inc. v. St. Paul Fire & Marine Ins. Co.*, 442 N.W.2d 153, 155 (Minn.1989). "Interpretation of an insurance policy is a question of law subject to de novo review." *National Family Ins. v. Bunton*, 509 N.W.2d 565, 567 (Minn.App.1993).

## 2. Stacking

■ The trial court denied appellant recovery under Tri–State's policy because "[t]he absolute prohibition against judicial stacking applies to the adding of UM coverages for the same vehicle." But the cases and statutory provisions cited by the trial court only prohibit stacking of the coverage limits for two or more vehicles. *See Austin Mut. Ins. Co. v. Templin*, 435 N.W.2d 584, 586 (Minn.App.1989) (defining judicial stacking as "pyramiding of separate first party coverages attributable to two or more vehicles *despite* policy language prohibiting stacking") (quoting *Rusthoven v. Commercial Standard Ins. Co.*, 387 N.W.2d 642, 644 n. 1 (Minn.1986)); Minn.Stat. § 65B.49, subd. 3a(6) (1998) (precluding the addition of UM or underinsured motorist coverage "for two or more motor vehicles" to determine the limit of coverage to an injured person for any one accident—"[r]egardless of the number of policies involved, vehicles involved, persons covered, claims made, vehicles or premiums shown on the policy, or premiums paid").

The trial court reasoned that "[a]llowing Plaintiff to add UM coverages simply because only one vehicle was involved, rather than the two or more as indicated by the statute, would require a narrow interpretation which would contradict the intent and purpose for which the statute was passed."

■ But when the words of a statute are unambiguous, a court must give effect to the plain meaning of the statute. *Grimm v. Commissioner of Pub. Safety*, 469 N.W.2d 746, 747 (Minn.App.1991). Moreover, a review of the history of stacking suggests the statute is directed as its language suggests. Before 1985, uninsured motorist protection followed the person and not the vehicle. *Hanson v. American Family Mut. Ins. Co.*, 417 N.W.2d 94, 95 (Minn.1987). And the Minnesota Supreme Court held that the No–Fault Act governing UM coverage placed "no geographical limits on coverage and does not purport to tie protection against uninsured motorists to occupancy of the insured vehicle." *Nygaard v. State Farm Mut. Auto. Ins. Co.*, 301 Minn. 10, 19, 221 N.W.2d 151, 156 (1974). Thus, a person injured in a collision with an uninsured motorist could collect UM benefits attached to the automobile involved in the accident and also collect UM benefits attached to covered automobiles not involved in the accident. *See Rusthoven*, 387 N.W.2d at 645 (injured insured able to add together benefit limits for 67 covered vehicles resulting in total recovery in excess of $1,000,000).

In 1985, in response to escalating insurance costs, the Minnesota Legislature amended the No–Fault Act. The amendment "outlawed the practice in which courts order stacking despite insurance policy language prohibiting it, but permitted stacking by agreement of policyholder and insurance company." *Austin Mut.*, 435 N.W.2d at 587. The amended No–Fault Act was meant to "reflect a broad policy decision to tie uninsured motorist and other coverage to the particular vehicle involved in the accident." *Hanson*, 417 N.W.2d at 96 (insured, injured while riding uninsured motorcycle, could not collect UM benefits attached to insured automobile).

In its order and memorandum, the trial court cites Minn.Stat. § 65B.49, subd. 3a(6), *Hanson*, and *Austin Mutual* as support for its holding denying appellant coverage under the Tri–State policy. But none of these authorities prevents appellant's recovery under two policies voluntarily kept in force to provide coverage on the one appellant-owned vehicle involved in the accident. Neither the trial court nor respondent cites authority in which dual policies covering one vehicle are

deemed violative of the anti-stacking statutes.[2]

It was error to conclude that appellant's recovery under both policies amounts to prohibited judicial stacking. The rules of law on stacking, the claim that first-party coverage on multiple-owned vehicles enlarges the exposure for an incident involving any one of them, do not govern the question of coverage of two policies written on the same vehicle.

### 3. Policy Language

Appellant correctly asserts that, as the terms are defined in the Tri–State policy, he and his family members are "insured" persons who were "occupying" the "covered auto" when hit by an uninsured motorist and are thus eligible for UM coverage. But the trial court denied appellant UM coverage under the Tri–State policy because appellant owned the Chevrolet Caprice at the time of the accident. The trial court accepted respondent's reasoning that "[u]nder the Tri–State policy, one does not access coverage by mere 'occupancy' unless that person *does not* '*own*' *the vehicle*." Respondent bases this conclusion on paragraph "B" of the "Other Insurance" clause of the Tri–State policy, which declares the priority of insurance on the vehicle over insurance on an insured; this clause applies only if an insured sustains injury while occupying a vehicle "not owned by that person or while not 'occupying' any vehicle." [3]

As respondent suggests, this clause does not apply to an occupant-claimant who owns the vehicle he occupied when injury occurred. But application of this paragraph does not determine whether a party is covered under the policy; rather, it determines when certain priority provisions apply. And in the circumstances of this case, it is wholly fruitless to determine whether to apply these provisions, which deal with a conflict between policies where one is on the injured person but not on the vehicle.[4] There is no lan-

---

2. Respondent argues that Minn.Stat. § 65B.49 subd. 3a(5) (1998) precludes appellant recovering under both policies. The first part of the statute provides:

> If at the time of the accident the injured person is occupying a motor vehicle, the limit of liability for uninsured and underinsured motorist coverages available to the injured person is the limit specified for that motor vehicle.

Respondent argues that this language "shows a clear legislative intent to make only one policy 'available' to a person who is occupying a motor vehicle." But the language of the statute does not support this interpretation. The statute limits the liability of each insurance company but does not limit the insured's recovery if more than one insurance company has written a policy covering the automobile involved in the accident.

The remainder of the statute and the cases cited by respondent in support of its argument only limit the amount of "excess insurance" available to one who tries to collect from a policy covering an owned automobile not involved in the accident and thus are not applicable in this case. *See* Minn.Stat. § 65B.49 subd. 3a(5) (setting limits on additional, alternate-source recovery when the "injured person is occupying a motor vehicle of which the injured person is not an insured"); *LaFave v. State Farm Mut. Auto. Ins. Co.,* 510 N.W.2d 16, 19 (Minn.App.1993) (insured not entitled to UM benefits under her own policy where she was covered under policy of vehicle in which she was riding); *Davis v. American Family Mut. Ins. Co.,* 521 N.W.2d 366 (Minn.App.1994) (injured automobile passenger who has not recovered benefits for damages sustained under policy covering the involved automobile may collect additional benefits from his personal automobile insurance policy).

3. The trial court also examined the same clause in the Austin Mutual policy, addressing the question of whether the Austin Mutual policy, by stating the priority or coverage on the vehicle, gave appellant "access" to the Tri–State policy; the court found no such statement of access because appellant, owning the vehicle he occupied, did not trigger the priority clause in the Austin Mutual policy. But there is no reason to find a declaration of Tri–State coverage in the Austin Mutual policy. To the contrary, each policy declares its own coverage and, as observed later in this opinion, neither contains language giving exclusivity or even priority to the coverage of the other policy.

4. Respondent also claims that "[a] vehicle owned by [appellant] Norton can never logically be made to fit" into paragraph "A" in the "Other Insurance" provisions of the Tri–State policy, which provides, respecting damages for which the owner or occupant on an UM vehicle is legally responsible, in an accident involving "your covered auto," that the applicable limit of liability is the limit stated in the policy for UM coverage. It is pointless to determine, as respondent would, whether the word "your" refers only to the named insured, the prior owner of the car, because applicability of the clause does not determine whether or not a party is covered. It is

guage in the Tri–State policy eliminating coverage for an occupant-claimant, other than the named insured, who owns the vehicle he was occupying when injured.

### 4. Closeness to the Risk

The trial court also precluded appellant's recovery under the Tri–State policy because appellant's Austin Mutual policy is "'nearer to the risk' than any coverage from Tri–State." The closeness-to-the-risk doctrine is applied when more than one insurance policy is potentially applicable and the loss cannot be apportioned among the insurers without violating the "other insurance" clause of at least one policy. *Integrity Mut. Ins. Co. v. State Auto. & Cas. Underwriters Ins. Co.*, 307 Minn. 173, 175, 239 N.W.2d 445, 447 (1976).[5] The application of the doctrine generally results in one policy being deemed primary and the other secondary. *See Illinois Farmers Ins. Co. v. Depositors Ins. Co.*, 480 N.W.2d 657 (Minn.App.1992). Occasionally, a statute precludes apportionment of loss among two applicable policies and it must be determined which one of two policies applies exclusively. *See Frishman v. Illinois Farmers Insurance Co.*, No. C3–941654, 1995 WL 34842 (Minn.App. Jan. 31, 1995) (statute limited injured insured to recovery from only "a policy," where two applied).

The closeness-to-the-risk doctrine is used only if a court first determines that the applicable policies' other-insurance clauses conflict. *See Illinois Farmers Ins. Co.*, 480 N.W.2d at 659. Here, respondent successfully urged application of the doctrine without first observing whether the Tri–State and Austin Mutual other-insurance clauses conflicted.[6]

Both the Austin Mutual and Tri–State "other-insurance" clauses state that they will pay up to the policy limit for damages for which the uninsured motorist is legally responsible, and both policies contain the following clause:

> We will pay only our share of the loss, not to exceed our share of the maximum recovery. Our share is the proportion that our limit of liability bears to the total of all applicable limits in the same level of priority.

Neither the Tri–State nor the Austin Mutual policy contains any other language that demands primary, much less exclusive, coverage under appellant's Austin Mutual policy. There is no conflict between the other-insurance clauses, and it is not necessary to apply the closeness-to-the-risk doctrine to prioritize coverage where both policies contain identical other-insurance clauses providing for payment of a proportionate share of the maximum recovery. *Cf. Northland Ins. Co. v. Continental W. Ins. Co.*, 550 N.W.2d 298 (Minn.App.1996) (refusing to apply closeness-to-the-risk analysis when other-insurance clauses in overlapping policies provided clear and consistent answer as to allocation of primary and excess coverage). It was error to hold that appellant is entitled to coverage from only the Austin Mutual policy.

### DECISION

Respondent has failed to identify principles of law defeating appellant's entitlement to coverage from both the Austin Mutual and Tri–State policies: Stacking limits have no bearing on the question of multiple coverages by two policies written on the same vehicle

---

undisputed that appellant does not have a claim under the policy for benefits greater than the stated UM limits of liability.

**5.** If the other-insurance clauses conflict, a court must:

> "examine the policies and determine whether the insurers are concurrently liable on the risk, or one is primarily liable and another only secondarily liable. If they are concurrently liable, each must pay a pro rata share of the entire loss. On the other hand, if one insurer is primarily liable and the other only second-

arily, the primary insurer must pay up to its limit of liability, and then the secondary insurer must pay for any excess up to its own limit of liability."

*Integrity*, 307 Minn. at 174–75, 239 N.W.2d at 446–47 (citations omitted).

**6.** Without determining if the other-insurance clauses conflicted, the trial court relied upon a closeness-to-the-risk analysis in *Heinen v. Illinois Farmers Ins. Co.*, 566 N.W.2d 378 (Minn.App. 1997). The *Heinen* closeness analysis follows a determination of conflict between other-insurance clauses of two policies. *Id.* at 381.

and there is no language in the Tri–State policy precluding coverage for appellant.

**Reversed and remanded.**