WILLIAM J. LANE *v.* METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY ET AL.
(AC 31251)

Harper, Robinson and Bear, Js.

Argued September 8—officially released December 7, 2010

*Kathryn Calibey*, with whom, on the brief, was *Eugene K. Swain*, for the appellant (plaintiff).

*Ronald W. Lindlauf, Jr.*, for the appellee (named defendant).

*Francis J. Drumm III*, with whom, on the brief, was *Kenneth J. Mulvey, Jr.*, for the appellee (defendant Horace Mann Insurance Company).

*Opinion*

BEAR, J. This appeal comes to us on a reservation of a legal issue pursuant to General Statutes § 52-235[1]

---

[1] General Statutes § 52-235 provides: "(a) The Superior Court, or any judge of the court, with the consent of all parties of record, may reserve questions of law for the advice of the Supreme Court or Appellate Court in all cases in which an appeal could lawfully have been taken to said court had judgment been rendered therein.

"(b) The court or judge making the reservation shall, in the judgment, decree or decision made or rendered in such cases, conform to the advice of the Supreme Court or the Appellate Court."

and Practice Book § 73-1.[2] The stipulation of the parties presents one question for the advice of this court: "Whether an insured with two separate uninsured motorist insurance policies that cover the same vehicle for uninsured motorist benefits is barred from collecting the policy limits of both policies combined?" We answer the reserved question in the negative.

For purposes of this reservation, the parties stipulated to the following facts. In a September 12, 2006 motor vehicle accident, the plaintiff, William J. Lane, was injured while driving eastbound on Interstate 84 in East Hartford when a piece of an unidentified vehicle's driveshaft, known as a universal joint, entered his 1992 Ford F-150 pickup truck (truck) through the windshield, striking him in the head or face. The accident caused him to suffer severe personal injuries, fair compensation for which exceeds $200,000.

The plaintiff was married approximately two months prior to the accident. Prior to his marriage, the plaintiff had purchased an insurance policy from the defendant Metropolitan Property and Casualty Insurance Company (Metropolitan) with effective policy dates from March 20, through September 20, 2006, and the plaintiff's truck was identified and insured under this policy. The policy included uninsured and underinsured motorist coverage with a per person limit of $100,000. On or about August 21, 2006, the plaintiff and his wife elected to consolidate their vehicle insurance with the defendant Horace Mann Insurance Company (Horace Mann), and the plaintiff's truck also was identified and insured under this policy. The plaintiff, however, did not terminate his policy with Metropolitan. The Horace Mann policy had effective dates from August 21, 2006, through February 21, 2007. The Horace Mann policy also included both uninsured and underinsured motorist

---

[2] Practice Book § 73-1 sets forth the procedure and form for reservations.

coverage with a per person limit of $100,000. The September 12, 2006 accident occurred during the thirty day period when the plaintiff and his truck were insured under both policies.[3] It is undisputed that the plaintiff paid a separate premium for each of the policies.

The plaintiff commenced this action on July 5, 2007, alleging claims for uninsured motorist benefits against both Metropolitan and Horace Mann pursuant to each of the policies. The parties agree that the plaintiff was injured through the negligence of an unidentified motorist, which invokes uninsured motorist coverage as defined in both policies. The parties also agree that damages suffered by the plaintiff exceed $200,000. Both policies, however, contained so-called "other insurance clauses," which state that if the insured is covered by another insurer providing uninsured motor vehicle coverage, then the total liability is limited to the single coverage with the highest limit of liability. Both Metropolitan and Horace Mann assert that the loss must be allocated pro rata between them up to a maximum of $100,000, the highest available limit of the policies at issue.

The trial court, *Sferrazza, J.*, ordered that the legal issue governing the amount of applicable uninsured coverage available to the plaintiff be reserved to the

[3] Metropolitan now asserts that the plaintiff was not covered by the Metropolitan policy at the time of the accident. Metropolitan cites a provision in its policy that states: "If you obtain other insurance on your covered automobile, any similar insurance provided by this policy will terminate as to that automobile on the effective date of the other insurance." Metropolitan asserts that, pursuant to this clause, the plaintiff affirmatively terminated coverage through the act of procuring a similar policy of insurance with Horace Mann. The stipulation of the agreed upon facts, however, states: "All premiums due and owing on said insurance policy were paid, and said insurance policy was in full force and effect." The new insurance provision was not included in the parties' joint stipulation, nor does its possible effect appear to have been raised before the trial court or in Metropolitan's answer to the plaintiff's complaint. Because we have been presented with a specific reserved question, we decline to address this argument.

Appellate Court. The parties stipulated that if the reserved question is answered in the negative, then the trial court shall render separate judgments in the amount of $100,000 against each defendant; the plaintiff shall be entitled to collect both judgments, for a total of $200,000, and, additionally, shall be entitled to collect applicable offer of judgment interest. The parties also agree that if the reserved question is answered in the affirmative, then the trial court shall render judgments in the amount of $50,000 against each defendant, and that the plaintiff shall recover a total of $100,000.

The plaintiff contends that *Pecker* v. *Aetna Casualty & Surety Co.*, 171 Conn. 443, 370 A.2d 1006 (1976), invalidated "other insurance clauses" to the extent that they restrict the full indemnification of a claimant. The defendants argue that the holding of *Pecker* is limited by the subsequent passage of Public Acts 1993, No. 93-297 (P.A. 93-297), the relevant language of which has been codified as General Statutes § 38a-336 (d). The defendants contend that § 38a-336 (d) permits recovery on uninsured and underinsured motorist coverage only up to the limit of a single policy. Our first task, therefore, is to determine whether the legislature, in enacting § 38a-336 (d), intended it to apply where an insured has two separate policies with uninsured motorist coverage purchased by the insured for the same vehicle. We conclude that § 38a-336 (d) does not apply to the unusual facts of this case.

"It is axiomatic that the process of statutory interpretation involves a reasoned search for the intention of the legislature." *In re Valerie D.*, 223 Conn. 492, 512, 613 A.2d 748 (1992). "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous

and does not yield absurd or unworkable results, extra-textual evidence of the meaning of the statute shall not be considered." General Statutes § 1-2z.

The defendants do not cite any statute or regulation that would bar an individual from *purchasing* two separate uninsured motorist policies with uninsured motorist coverage on the same motor vehicle or that would invalidate one or both of such purchases after either or both occurred. Their argument, which is based on the language of § 38a-336 (d), is that an individual would be barred from *collecting* the policy limits of both such policies. Section 38a-336 (d) provides: "Regardless of the number of policies issued, vehicles or premiums shown on a policy, premiums paid, persons covered, vehicles involved in an accident, or claims made, in no event shall the limit of liability for uninsured and underinsured motorist coverage *applicable to two or more motor vehicles* covered under the same or separate policies be added together to determine the limit of liability for such coverage available to an injured person or persons for any one accident. If a person insured for uninsured and underinsured motorist coverage is an occupant of a nonowned vehicle covered by a policy also providing uninsured and underinsured motorist coverage, the coverage of the occupied vehicle shall be primary and any coverage for which such person is a named insured shall be secondary. All other applicable policies shall be excess. The total amount of uninsured and underinsured motorist coverage recoverable is limited to the highest amount recoverable under the primary policy, the secondary policy or any one of the excess policies. The amount paid under the excess policies shall be apportioned in accordance with the proportion that the limits of each excess policy bear to the total limits of the excess policies. If any person insured for uninsured and underinsured motorist coverage is an occupant of an owned vehicle, the

uninsured and underinsured motorist coverage afforded by the *policy covering the vehicle occupied at the time of the accident* shall be the only uninsured and underinsured motorist coverage available." (Emphasis added.)

The defendants argue that the relevant part of § 38a-336 (d) is the last sentence, and they assert that the use of the singular word "policy" limits an injured individual, occupying an owned vehicle, to the uninsured motorist coverage of one policy. We decline to read the last sentence in isolation, as the defendants request. See generally *Durso* v. *Vessichio*, 79 Conn. App. 112, 119, 828 A.2d 1280 (2003) (declining to read two statutory clauses independently of one another). We are persuaded that, had the General Assembly intended these provisions to be read independently, it would have constructed the statute to separate the first sentence containing the requirement of "two or more motor vehicles" from the subsequent sentences.

Because the first sentence of § 38a-336 (d) specifically applies to uninsured and underinsured coverage for two or more motor vehicles, we conclude that the remainder of such subsection also pertains only to situations involving two or more motor vehicles. The sentences following the opening sentence of subsection (d) set forth additional restrictions on recovery for occupants of nonowned and owned motor vehicles. The last sentence of the subsection provides that if any person with uninsured or underinsured motorist coverage is an occupant of an owned vehicle, the coverage available is limited to "the policy covering the vehicle occupied at the time of the accident . . . ." General Statutes § 38a-336 (d). It is reasonable to interpret the provision so that the use of the singular "policy" in this context includes uninsured and underinsured motorist coverage pursuant to each of the owner's policies identifying and covering the vehicle occupied by the owner at the time

of the accident. In this case, the plaintiff had two policies identifying and covering his truck for which he paid a separate premium to each defendant, and his claims are *not* based on coverage provided to "two or more motor vehicles," e.g., his vehicle and his spouse's vehicle.

The defendants note that our Supreme Court has interpreted the use of a single "policy" and plural "policies" in subsection (e) of § 38a-336 and argue that such interpretation should be applied to subsection (d).[4] See *Lash* v. *Aetna Casualty & Surety Co.*, 236 Conn. 318, 325, 673 A.2d 84 (1996); *Covenant Ins. Co.* v. *Coon*, 220 Conn. 30, 35–36, 594 A.2d 977 (1991) (construing § 38a-336 [d], now [e]). In *Lash*, the court could not "assume that the legislature, in enacting a statutory provision that uses a particular word in the plural and then the same word in the singular, intended for two different words to have the same meaning . . . ." *Lash* v. *Aetna Casualty & Surety Co.*, supra, 325. In subsection (e), however, "the two different terms [were] used in the same sentence and refer[red] to two different things." Id. General Statutes § 1-1 (f) instructs us, however, that "[w]ords importing the singular number may extend and be applied to several persons or things, and words importing the plural number may include the singular." The court recognized this in *Covenant Ins. Co.*, noting that "in the interpretation of statutes, singular terms may have a plural meaning." *Covenant Ins. Co.* v. *Coon*, supra, 36 n.6. The use of the singular "policy" in subsection (e) is contrasted with the use of the plural "policies" within the same sentence. Section 38a-336 (e) "unequivocally refers to the liability provisions in the plural but

---

[4] General Statutes § 38a-336 (e) provides: "For the purposes of this section, an 'underinsured motor vehicle' means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subsection (b) of this section."

the uninsured motorist provisions in the singular." Id., 35–36; id. (construing § 38a-336 [d], now [e]). Additionally, even if the sixth sentence of subsection (d) of § 38a-336 is read independently of the first sentence therein, the use of the singular word "policy" does not limit the plaintiff to one policy when he purchased coverage under two separate policies for a vehicle he occupied at the time of the accident, and the singular word "policy" is reasonably applicable to each such policy. Each of the plaintiff's policies specifically covered his truck that he occupied at the time of his accident.

This reading of § 38a-336 (d) does not yield results prohibited by § 1-2z. In this case, the plaintiff insured had the rare occurrence for a period of thirty days of owning two policies on his truck for which he had paid two separate premiums and of having a serious accident during such period of multiple coverage. Thus, requiring both defendants to pay the limits of coverage pursuant to their respective policies would not result in a windfall to the plaintiff because it is undisputed that the plaintiff paid for both primary policies on his truck, and his damages exceeded the limits of both primary policies combined.[5] Furthermore, permitting a claimant with two separate insurance policies that provided uninsured and underinsured motorist coverage for the same vehicle to collect the limits of both policies when his damages exceed the total of such coverage would not prejudice either defendant. For a period of approximately one month, the plaintiff paid premiums for two separate policies covering the same owned vehicle. Each defendant insurer separately underwrote and

---

[5] In holding that an insured with two separate primary uninsured motorist insurance policies that cover the same vehicle for uninsured motorist benefits may collect the policy limits of both policies combined, we do not intend to abrogate the rule that an insured may not recover double payment of damages under overlapping insurance coverage. See *Buell* v. *American Universal Ins. Co.*, 224 Conn. 766, 775, 621 A.2d 262 (1993).

priced its respective policy, and each insurer was separately compensated for assuming the risk that injury to the insured could occur, while he occupied such vehicle.

In addition, § 38a-336 (d), which codified part of P.A. 93-297, was intended to bar the judicially approved practice of "stacking."[6] *Young* v. *Metropolitan Property &*

[6] Horace Mann argues that the legislative history of P.A. 93-297 reveals a public policy intent to preclude the aggregation of uninsured motorist policies that cover the same vehicle, including, but not limited to, more than one policy purchased on a specific vehicle. Although the legislative history of P.A. 93-297 is not a factor in our analysis pursuant to § 1-2z, we see nothing in the legislative history to substantiate Horace Mann's argument. The legislative history contains no reference to "stacking" as including two separately purchased insurance policies covering the same identified vehicle. In fact, any reference to the term in the legislative history overwhelmingly is in the context of two or more vehicles. See 36 H.R. Proc., Pt. 27, 1993 Sess., p. 9688, remarks of Representative Dale W. Radcliffe; Conn. Joint Standing Committee Hearings, Insurance and Real Estate, Pt. 2, 1993 Sess., p. 391, remarks of Robert B. Adelman, president, Connecticut Trial Lawyers Association; Conn. Joint Standing Committee Hearings, supra, pp. 456–57, remarks of Michael Antonini, private insurance agent. The office of legislative research bill summary for the legislation defines stacking as "add[ing] together the limits of liability under the uninsured and underinsured motorist portion of their policy when it covers *two or more vehicles* or when they own *two or more vehicles* covered under separate policies to determine the limits of liability available to injured people for any single accident." (Emphasis added.) Office of Legislative Research, Amended Bill Analysis for Substitute House Bill No. 5176, as amended by House Amendment A. Furthermore, a rationale for the antistacking provision was the rising cost of automobile insurance premiums. 36 S. Proc., Pt. 13, 1993 Sess., p. 4621, remarks of Senator Martin M. Looney. The purpose of § 38a-336 (d) was to tie uninsured and underinsured motorist coverage to the particular vehicle involved in an accident, thus reducing coverage for the consumer. See id., pp. 4607–4608, remarks of Senator Donald E. Williams, Jr.; see also id., p. 4614, remarks of Senator William A. Aniskovich. Were an insured with two separate primary policies on the same vehicle containing uninsured motorist coverage limited to recovery of only the limits of one of the policies, he would receive the same benefit as the insured whose coverage was limited by the abolition of stacking, but he would not receive all of the benefits for which he had paid separate premiums. Even had we determined that § 38a-336 (d) was not clear and unambiguous, an examination of the legislative history reveals that the General Assembly did not intend to include the present situation when enacting that provision.

*Casualty Ins. Co.*, 60 Conn. App. 107, 110 n.3, 758 A.2d 452, cert. denied, 255 Conn. 906, 762 A.2d 912 (2000). Our reading of the statute does not contravene the statutory prohibition of stacking. Prior to the enactment of P.A. 93-297, our Supreme Court defined stacking as referring "to the ability of the insured, when covered by more than one insurance policy, to obtain benefits from a second policy on the same claim when recovery from the first policy alone would be inadequate." *Nationwide Ins. Co.* v. *Gode*, 187 Conn. 386, 388 n.2, 446 A.2d 1059 (1982), overruled in part on other grounds by *Covenant Ins. Co.* v. *Coon*, 220 Conn. 30, 36 n.6, 594 A.2d 977 (1991). Although this definition facially could be broad enough to encompass a situation in which two separate uninsured motorist insurance policies cover the same vehicle, the court went on to elaborate the rationale for stacking, stating that it "is derived from the presumption that when the named insured purchases uninsured motorist coverage on *more than one automobile*, he intends to buy extra protection for himself and his family, regardless of whether his injury occurs in any one of his insured vehicles or elsewhere." (Emphasis added; internal quotation marks omitted.) Id., 388 n.2. Therefore, our reading of § 38a-336 (d) is consistent with this definition.

The Minnesota Court of Appeals has addressed this issue directly. The court held that when two policies are written on the same vehicle, the legislative prohibition on stacking is inapplicable. *Norton* v. *Tri-State Ins. Co. of Minnesota*, 590 N.W.2d 649 (Minn App. 1999), review denied, 1999 Minn. LEXIS 348 (Minn. May 26, 1999). The Minnesota Supreme Court later explained the holding of the *Norton* decision: "In *Norton*, at the time of the accident, the injured party was occupying a Chevrolet Caprice that he had recently purchased. . . . After the accident, the injured party made claims for primary [uninsured motorist] benefits under two

different insurance policies that both specifically described and insured the Caprice: an insurance policy purchased by the injured party after he bought the Caprice, and an insurance policy on the Caprice purchased by the prior owner, which was left in force because part of the purchase price remained unpaid. . . . The district court had concluded that the injured claimant could not make [uninsured motorist] claims under both policies because of the statutory prohibition on stacking. . . . The court of appeals reversed, concluding that the statutory prohibition on stacking applies to adding together the limit of liability for [uninsured motorist] and [underinsured motorist] coverages 'for two or more motor vehicles' . . . and 'do[es] not govern the question of coverage of two policies written on the same vehicle' . . . ." (Citations omitted.) *West Bend Mutual Ins. Co.* v. *Allstate Ins. Co.*, 776 N.W.2d 693, 700 (Minn. 2009).

For these reasons, we conclude that § 38a-336 (d) does not bar an insured with two separate primary policies containing uninsured motorist coverage on the same vehicle from collecting the policy limits of both primary policies combined if the damages to the insured equal or exceed such coverage.

The next step in our analysis is to determine whether the so-called "other insurance" clauses in the defendants' contracts would bar the insured from collecting the limits of both policies combined.

The plaintiff cites *Pecker* v. *Aetna Casualty & Surety Co.*, supra, 171 Conn. 443, in which the court held that "other insurance" clauses were invalid "[o]n the basis of the statutes and regulations of this state . . . ." Id., 452. The defendants contend that *Pecker* is invalid because it was decided when stacking automobile insurance policies was an accepted practice, and, therefore, its holding was abrogated by the passage of P.A. 93-297.

In *Pecker*, the plaintiff was riding a motorcycle when he was struck by an uninsured motorist. Id., 445. The motorcycle was insured under a policy from one company, but the plaintiff also was insured under an automobile policy issued to his father by a second insurance company. Id. The plaintiff settled with the second company for an amount less than the amount of the maximum $20,000 coverage under each policy. Because his damages exceeded the amount of the settlement, however, he also submitted a claim to the first company. Id. The first company denied coverage, claiming that, because of the second company's payment, it was not liable pursuant to the "other insurance" clause in its policy.[7] Id., 445–46.

[7] The "other insurance" clause at issue in *Pecker* was similar to the "other insurance" clauses in the defendants' contracts, and Metropolitan and Horace Mann do not argue that the "other insurance" clauses in the plaintiff's contracts are different substantively from the "other insurance" clause at issue in *Pecker*.

The clause in *Pecker* stated: "[I]f the Insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the Company shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance." *Pecker* v. *Aetna Casualty & Surety Co.*, supra, 171 Conn. 445–46.

Metropolitan's clause states: "If there is other similar insurance, we will pay our fair share. The total amount of recovery under all policies will be limited to the highest of the applicable limits of liability of this insurance and such other insurance. Our fair share is the proportion that our limit bears to the total of all applicable limits. However, if you do not own the motor vehicle, our insurance will be excess over other similar uninsured or underinsured insurance available but only in the amount by which the limit of this policy exceeds the limits of liability of the other available insurance. If there is other excess or contingent insurance, we will pay our fair share. No payments will be made until the limits of all other liability insurance and bonds that apply have been exhausted by payments."

Horace Mann's clause states: "If the insured sustains bodily injury while occupying your car, and your car is described on the declarations page of another policy issued by us or any other insurer providing uninsured or underinsured motor vehicle coverage: a. the total limits of liability under all such coverages shall not exceed that of the coverage with the highest limit of liability; and b. we are liable only for our share. Our share is that percent of the damages that the limit of liability of this coverage bears to

The court reasoned that General Statutes § 38-175a[8] required the insurance commissioner to adopt regulations with respect to automobile liability insurance policies and that such regulations "have the force of statute." Id., 449. The court concluded that "an insurer may reduce the limits of its uninsured motorist coverage only as permitted by [Regs., Conn. State Agencies] § 38-175a-6 (d) . . . ." Id., 450. Under these regulations, an insurance company can reduce its liability under an uninsured motorist provision to the extent of any sums paid "by or on behalf of any person responsible for the injury" but "[t]he regulations do not authorize any reduction of coverage because of 'other insurance.' "[9]

the total of all such uninsured or underinsured motor vehicle coverage applicable to the accident."

[8] General Statutes § 38-175a has since been transferred and is now § 38a-334.

[9] Section 38-175a-6 of the Regulations of Connecticut State Agencies, titled "Minimum provision for protection against uninsured motorists," as it existed at the time of the decision in *Pecker* provides in relevant part: "(a) Coverage. The insurer shall undertake to pay on behalf of the insured all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle or motorcycle because of bodily injury sustained by the insured caused by an accident involving the uninsured motor vehicle or motorcycle. This coverage shall insure the occupants of every motor vehicle to which the bodily injury liability coverage applies. . . . (d) Limits of liability. The limit of the insurer's liability may not be less than the applicable limits for bodily injury liability specified in subsection (a) of § 14-112 of the general statutes, except that the policy may provide for the reduction of limits to the extent that damages have been (1) paid by or on behalf of any person responsible for the injury, (2) paid or are payable under any workmen's compensation or disability benefits law, or (3) paid under the policy in settlement of a liability claim. The policy may also provide that any direct indemnity for medical expense paid or payable under the policy or any amount of any basic reparations benefits paid or payable under the policy will reduce the damages which the insured may recover under this coverage and any payment under these coverages shall reduce the company's obligation under the bodily injury liability coverage to the extent of the payment." *Pecker* v. *Aetna Casualty & Surety Co.*, supra, 171 Conn., 449–50.

Section 38-175a-6 of the Regulations of Connecticut State Agencies, titled "Minimum provision for protection against uninsured motorists," was transferred to § 38a-334-6, and at the time of the accident it provided in relevant part: "(a) Coverage. The insurer shall undertake to pay on behalf of the insured all sums which the insured shall be legally entitled to recover as

Id., 450–51. Section 38-175a-6 (a) of the Regulations of Connecticut State Agencies "clearly indicates that an insurer making payment under the uninsured motorist coverage provisions of its policy makes that payment 'on behalf of' the insured, not the uninsured motorist. On the basis of the statutes and regulations of this state, we hold that 'other insurance' clauses included in uninsured motorist coverage provisions are invalid." Id., 452.[10]

The rule that an insurer may reduce the limits of its uninsured motorist coverage only as permitted by § 38-175a-6 (d) of the Regulations of Connecticut State Agencies was consistently reiterated by the Supreme Court in decisions following *Pecker*, including *Allstate Ins. Co.* v. *Ferrante*, 201 Conn. 478, 483, 518 A.2d 373 (1986)

---

damages from the owner or operator of an uninsured or underinsured motor vehicle because of bodily injury sustained by the insured caused by an accident involving the uninsured or underinsured motor vehicle. This coverage shall insure the occupants of every motor vehicle to which the bodily injury liability coverage applies . . . . (d) Limits of liability. (1) The limit of the insurer's liability may not be less than the applicable limits for bodily injury liability specified in subsection (a) of section 14-112 of the general statutes, except that the policy may provide for the reduction of limits to the extent that damages have been (A) paid by or on behalf of any person responsible for the injury, (B) paid or are payable under any workers' compensation law, or (C) paid under the policy in settlement of a liability claim. (2) The policy may also provide that any direct indemnity for medical expense paid or payable under the policy will reduce the damages which the insured may recover under this coverage. (3) Any payment under these coverages shall reduce the company's obligation under the bodily injury liability coverage to the extent of the payment. . . ."

There is no substantive difference between these regulations with respect to the issues in this case, and thus the holding of *Pecker* is applicable thereto.

[10] The Supreme Court later noted that *Pecker* did not invalidate "other insurance" clauses for all purposes and such clauses were valid when used to establish the order of payment obligations. *Aetna Casualty & Surety Co.* v. *CNA Ins. Co.*, 221 Conn. 779, 784, 606 A.2d 990 (1992). "Public policy is not violated when 'other insurance' clauses are used for the purpose of establishing the order of payment between insurers. When the insured is afforded full indemnification for a loss, there is no public policy issue controlling how insurers divide coverage among themselves." Id., 785. The clauses should be enforced if they "would not produce adverse consequences for the insured . . . ." Id.

("an insurer may not, by contract, reduce its liability for such uninsured or underinsured motorist coverage except as § 38-175a-6 of the Regulations of Connecticut State Agencies expressly authorizes"); *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 199, 530 A.2d 171 (1987) ("the trial court was correct in finding that General Statutes § 38-175c and § 38-175a-6 [d] [1] of the regulations of Connecticut state agencies do not allow an insurer to reduce its liability for underinsured motorist coverage by an amount of money received by the insured pursuant to a dram shop policy"); *Streitweiser* v. *Middlesex Mutual Assurance Co.*, 219 Conn. 371, 377, 593 A.2d 498 (1991) ("we have held repeatedly that an insurer may not, by contract, reduce its liability for such uninsured or underinsured motorist coverage except as § 38a-175a-6 [now § 38a-334-6] of the Regulations of Connecticut State Agencies *expressly* authorizes" [emphasis in orginal; internal quotation marks omitted]); *Vitti* v. *Allstate Ins. Co.*, 245 Conn. 169, 179, 713 A.2d 1269 (1998) ("[c]onsequently, we conclude that both § 38a-334-6 [d] [2] and the insurance policy, which tracks the language of the regulation, unambiguously allow the defendant to offset the available uninsured or underinsured motorist coverage by the amount of social security disability benefits paid or payable to the plaintiff").

The argument that passage of P.A. 93-297 abrogates this rule is unfounded. Subsequent to the 1993 legislation, the Supreme Court reiterated that "an insurer may not, by contract, reduce its liability for . . . uninsured or underinsured motorist coverage, "except as authorized by § 38a-334-6 of the Regulations of Connecticut State Agencies." (Internal quotation marks omitted.) *Orkney* v. *Hanover Ins. Co.*, 248 Conn. 195, 201, 727 A.2d 700 (1999). This court has also reaffirmed this rule in *Nichols* v. *Salem Subway Restaurant*, 98 Conn. App. 837, 841, 912 A.2d 1037 (2006) ("an insurer may not, by contract, reduce its liability for such uninsured or

underinsured motorist coverage except as § 38-175a-6 [now § 38a-334-6] of the Regulations of Connecticut State Agencies expressly authorizes"), and *Jacaruso* v. *Lebski*, 118 Conn. App. 216, 226, 983 A.2d 45 (2009) ("[c]onsequently, because § 38a-334-6 [d] [1] [C] permits a reduction for benefits paid to settle a liability claim, the policy language must be deemed to provide the defendant with a legitimate reduction").

For these reasons, we conclude that the exceptions permitting offsets against coverage set forth in § 38a-334-6 (d) of the Regulations of Connecticut State Agencies do not apply to the present case and that the defendants' "other insurance" clauses do not bar an insured who purchased two separate uninsured motorist insurance policies that cover the same vehicle for uninsured motorist benefits from collecting the policy limits of both policies combined.

The reserved question is answered: "No."

No costs will be taxed in this court to any party.

In this opinion the other judges concurred