# IN THE COURT OF APPEALS OF IOWA

No. 20-0426
Filed June 17, 2020

**IN THE INTEREST OF N.W.,**
**Minor Child,**

**T.N., Mother,**
    Appellant,

**D.W., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Dubuque County, Thomas J. Straka, Associate Juvenile Judge.

A mother and father separately appeal the termination of their parental rights to one child under Iowa Code chapter 232 (2019). **AFFIRMED ON BOTH APPEALS.**

Gina L. Kramer of Reynolds & Kenline, L.L.P., Dubuque, for appellant mother.

William A. Lansing of William A. Lansing, P.C., Dubuque, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Patricia Reisen-Ottavi, Dubuque, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Greer and Ahlers, JJ.

**GREER, Judge.**

A mother and father separately appeal the termination of their parental rights to one child under Iowa Code chapter 232 (2019). After considering the parties' arguments, we affirm the order terminating parental rights.

**I. Background Facts and Proceedings.**

D.W. is the father and T.N. is the mother of N.W., born in March 2019. The parents, as a result of their substance-abuse issues, have a history of involvement with the Iowa Department of Human Services (DHS) for all of their children. Two weeks before N.W. was born, the parents did not contest the termination of their rights to another child, born in 2017. That child, who was born with methamphetamine in her system, was adopted by the mother's sister. The father has an eight-year-old child from a previous relationship who lives with the child's mother and visits the father on some weekends. The mother has four older children who live with their father in Elgin, Iowa, who she visits twice monthly.

In early March 2019, DHS received a report that the parents were using illegal substances while caring for the father's then seven-year-old child. This child reported that T.N. was "going crazy" and he could not wake his father. This resulted in a founded child-abuse assessment for denial of critical care against both D.W. and T.N. This incident did not lead to any juvenile court proceedings.

DHS most recently became involved with this family after N.W. was born. The child was born prematurely after the mother experienced a stroke at thirty-two weeks pregnant. The stroke left the mother vision impaired. The mother tested positive for methamphetamine at the hospital, but the child tested negative. Because of her prematurity, the child remained hospitalized for over a month. As

the child was nearing the discharge date, the hospital, after being unable to contact the parents for two weeks, contacted DHS. DHS then began removal proceedings.

The child was removed from the parents' custody on April 22 and placed in a maternal cousin's care about 120 miles from the parents' home in Dubuque. The child was adjudicated in need of assistance in May.

Throughout the case, the overarching challenge was the parents' struggle with sobriety. The mother denied using methamphetamine before N.W.'s birth but acknowledged a relapse in April, after the child was born. She tested positive for methamphetamine in July. Also in July, the mother started substance-abuse treatment. She successfully completed the program three months later. But the mother tested positive for methamphetamine in August and September. The mother claimed all of the positive results were false positives resulting from her blood-pressure medication. To further complicate matters, the parents have also tested positive for THC during this case. The father acknowledged his use of marijuana; the mother denied ever using marijuana but acknowledged being around others using it.

On a positive note, the parents participated in weekly four-hour supervised visits with the child, and by all accounts the visits have gone well. But the parents were given the opportunity to have additional visits with the child by contacting the relative placement directly, yet the parents did not set up those visits. The parents never progressed beyond supervised visits, and the child never returned to the parents' care, even on a trial basis, because of the parents' ongoing substance-abuse concerns.

The State filed the termination petition on October 7. Both parents tested positive for THC in early January 2020. The court held the termination hearing on January 30, 2020.

At the termination hearing, the court received deposition testimony from two experts about whether it was possible the mother was having false positive results for methamphetamine on her drug tests because of her blood-pressure medication. Both experts testified that there are two kinds of methamphetamine, the "D" form, which is illegal methamphetamine, and an "L" form, which can appear on a drug test when a person uses certain over-the-counter substances, such as Vicks inhalers ingested in large quantities.

The mother's expert, Dr. Lee Berman, was her treating psychiatrist. Dr. Berman opined that in his clinical experience he has seen people with false positive drug screens while taking the same blood pressure medication as the mother. Dr. Berman generally referenced peer-reviewed studies showing the possibility for false positives, but he could not cite or produce any of this literature by name.

The State's expert, Dr. David Kuntz, is the executive director for analytical toxicology and the laboratory director at Clinical Reference Laboratory in Kansas. Dr. Kuntz has a master's degree and doctorate degree in pharmaceutical sciences, has specialized training in forensic toxicology, is a fellow of the American Board of Forensic Toxicologists, and has over thirty years of experience in the field of forensic toxicology. Dr. Kuntz opined the mother's blood pressure medication was not a "drug[] of concern to create any type of false positive for methamphetamine,

either as a D isomer or L isomer." He was unaware of any studies linking the blood-pressure medication to a false positive for methamphetamine.

The court noted that the test used in the mother's earlier positive results did not differentiate between "D" and "L" forms of methamphetamine. Because the lab had retained the samples and they could be retested, the court authorized more specific drug testing. The results of the retesting of samples were still pending at the time of the hearing. The court, by agreement of the parties, left the record open after the termination hearing to receive the results of the testing. The results came back positive for the "D" form of methamphetamine, proving the mother was using illegal substances.

On February 24, the court entered an order terminating both the mother and father's parental rights under Iowa Code section 232.116(1)(g), (h), and (*l*). Both the mother and father appeal.

## II. Standard of Review.

We review termination-of-parental-rights proceedings de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). Our primary concern is the best interests of the child. *In re M.D.*, 921 N.W.2d 229, 232 (Iowa 2018).

## III. Father's Appeal.

On appeal, the father does not contest any of the grounds for termination. Instead, he claims it violated his due process rights under the United States and Iowa Constitutions to require him to file the petition on appeal prior to receiving and reviewing the transcript of the termination hearing; DHS did not make

reasonable efforts toward reunification; and the court should have granted him an extension of time to reunify with the child. We will address his claims in turn.

**A. Due Process.** The father first argues it violates his due process rights under the United States and Iowa Constitutions to require him to file a petition on appeal before receiving a transcript of the termination hearing. Our court has previously considered and rejected this argument. *See In re T.S.*, 868 N.W.2d 425, 432–34 (Iowa Ct. App. 2015); *In re R.K.*, 649 N.W.2d 18, 20–22 (Iowa Ct. App. 2002). The Iowa Supreme Court reached a similar conclusion about the lack of full briefing in termination appeals. *See In re C.M.*, 652 N.W.2d 204, 212–13 (Iowa 2002). We likewise reject the father's due process challenge.

**B. Reasonable Efforts.** The father next argues DHS failed to provide him with resources for anxiety medication and inpatient substance-abuse treatment. The father raised this argument for the first time at the termination hearing. "[T]he State has the obligation to provide reasonable reunification services," but the parent "ha[s] the obligation to demand other, different, or additional services prior to the termination hearing." *In re S.R.*, 600 N.W.2d 63, 65 (Iowa Ct. App. 1999). "Where a parent 'fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding.'" *T.S.*, 868 N.W.2d at 442 (citation omitted). The father's failure to raise a reasonable-efforts complaint before the termination hearing waives the issue on appeal.

**C. Extension of Time.** Finally, the father argues he should have been granted six more months to pursue reunification with the child. Iowa Code section 232.117(5) allows the court to grant an extension of time if parental rights are not

terminated following the termination hearing. But to continue placement for six more months, the juvenile court must determine that "the need for removal will no longer exist at the end of the extension." *In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005). "The judge considering [the extension] should however constantly bear in mind that, if the plan fails, all extended time must be subtracted from an already shortened life for the child[] in a better home." *Id.* at 92–93 (citation omitted).

Here, the court declined to grant the father an extension of time because it could not determine that the need for removal would no longer exist at the end of the extension. The court pointed to the parents' lack of progress throughout the case, and it noted that it had granted continuances for discovery and depositions during the termination case and the parents did not make any progress in spite of the additional time allowed. The parents never progressed beyond fully supervised visits, did not exercise any additional visitation the child's caregiver offered, and continued to use illegal substances. We conclude the juvenile court properly declined to grant the father an extension of time to reunify with his child. Finding all the father's arguments without merit, we affirm the juvenile court order terminating his rights to N.W.

**IV. Mother's Appeal.**

On appeal the mother claims the State failed to prove grounds for termination and DHS failed to make reasonable efforts toward reunification.

**A. Grounds for Termination.** The court terminated the mother's parental rights under Iowa Code section 232.116(1)(g), (h), and (*l*). "On appeal, we may affirm the juvenile court's termination order on any ground that we find supported

by clear and convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). As for section 232.116(1)(h),[1] the mother challenges only the final element: that "[t]here is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time." Iowa Code § 232.116(1)(h)(4).

The mother has a long history of DHS involvement as a result of her methamphetamine use. She continued to test positive for methamphetamine and THC throughout this case despite her successful discharge from substance-abuse treatment. Even more troubling is her denial of her substance-abuse issues. She instead blames her positive drug screens for methamphetamine on her blood pressure medication, even after the more specific drug testing dispelled that claim, and her positive tests for THC on other people. The court found the "mother's claims that her positive test results were due to her medications to be lacking in credibility and scientific support."

Together with the mother's drug use, concerns about the father's drug use and paternal grandfather's criminal activities involving drugs also prevented the child's return to the mother's care. The mother and father continue to live together,

---

[1] Iowa Code section 232.116(1)(h) permits the court to terminate parental rights if the court finds all of the following:

    (1) The child is three years of age or younger.

    (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

    (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.

    (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

along with the child's paternal grandfather. The father acknowledged using marijuana throughout this case, including shortly before the termination hearing. During the pendency of the termination case, the grandfather pled guilty to controlled substance violations involving methamphetamine. The juvenile court took judicial notice of the grandfather's criminal case file.

After considering the evidence presented, we conclude there was clear and convincing evidence that the child could not be returned to the mother's custody at the time of the termination hearing. For that reason, the State proved grounds for termination under section 232.116(1)(h), and we need not consider the mother's arguments on subsections (g) or (*l*).

**B. Reasonable Efforts.** The mother next argues DHS failed to make reasonable efforts toward reunification by failing to provide her with additional visitation with the child and by placing the child 120 miles away rather than looking for a foster home closer to Dubuque. The mother contends that her vision impairment, financial condition, and distance from the child all impacted her ability to attend visits.

DHS must "make every reasonable effort" to reunify the parent and child "as quickly as possible consistent with the best interests of the child." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000) (quoting Iowa Code § 232.102(7) (1995)); *see also* Iowa Code § 232.102(9) (2019). "[W]hat constitutes reasonable services varies based upon the requirements of each individual case." *In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002). Reasonable efforts "includes visitation designed to facilitate reunification while providing adequate protection for the child." *C.B.*, 611 N.W.2d

at 493. "[T]he nature and extent of the visitation is always controlled by the best interests of the child." *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996).

Here, the parents opted to have one longer visit per week rather than two shorter visits because of the distance. In a cycle of the parents' making, DHS would not progress visits so long as the parents continued to test positive for illegal substances, and because the parents continued to test positive, they did not progress beyond fully supervised visits.

The parents were, however, given options to have additional contact with the child. The DHS caseworker offered to allow the parents to ride along with her as she picked up and returned the child for visits. This would have allowed the parents to spend additional time with the child. The parents declined. DHS also gave the parents the option of setting up additional weekend visits with the relative caring for the child. The parents again declined. The relative offered to speak with the parents on the phone daily, and, though the child is young, the relative also offered to facilitate daily phone contact between the parents and the child. The parents did not take advantage of the caregiver's offer for contact. When the mother was asked why the parents did not take advantage of an extra Sunday visit they had been offered, she testified:

> It just didn't work out for our schedule. We had a visit Saturday until like 3:15 and then that would consist of having to drive all the way up there and back, and we would have had [the father's older child] with us as well and he had school Monday morning. He has daycare anyway.

When asked why she did not use extra visits the caregiver offered, the mother testified:

Things just feel very uncomfortable between [the caregiver] and I and as well as I only get limited time with my other kids as well for visits due to everybody's schedule, and it really makes things hard to pick and choose on what children I want to see and what children I can't.

The court found DHS made reasonable efforts regarding visitation. We agree. We acknowledge that the distance and the mother's vision impairment were barriers, but the mother was offered many options to have more contact with the child and declined. Even so, the mother's ongoing substance abuse was the biggest barrier to DHS allowing more, and unsupervised, visitation with the child. We conclude DHS made reasonable efforts. Finding the mother's claims without merit, we affirm the termination of her parental rights.

**V.  Disposition.**

We affirm the juvenile court order terminating the mother and father's parental rights to N.W.

**AFFIRMED ON BOTH APPEALS.**